John C. Pharr
LAW OFFICES OF JOHN C. PHARR, P.C.
1577 C St., Ste 204
Anchorage, AK 99501
(907) 272-2525 Phone
(907) 531-1824 Fax
jpharr@pharr-law.net

Attorney for Plaintiff and Counter Defendant

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| LAW OFFICES OF CHRISTY LEE, P.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| MEGHAN LAWYER RAE and ) | |
| MANIFEST LEGAL, LLC ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| MEGHAN LAWYER RAE, ) | |
| ) | |
| Counterclaim Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| LAW OFFICES OF CHRISTY LEE, P.C. ) | |
| and CHRISTINA LEE, ) | |
| ) | |
| Counterclaim Defendants) | |
| _____ ) | Case No.  3:24-cv-00176-SLG |

## MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM SCHACK LAW GROUP

COMES NOW, Plaintiff LAW OFFICES OF CHRISTY LEE, P.C. ("Firm"), by and

through counsel LAW OFFICES OF JOHN C. PHARR, P.C., and moves the court to impose a

constructive trust on any and all income, fees, and other financial benefits received or to be

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP
Page 1

Law Offices of Christy Lee, P.C. v. Meghan Rae          Case No.  3:24-cv-00176-SLG
Case 3:24-cv-00176-SLG     Document 47     Filed 11/26/24     Page 1 of 21

received by Defendants Meghan Rae ("Lawyer Rae") and Manifest Legal, LLC ("Manifest Legal"), from the Schack Law Group ("Schack Law"), a professional law corporation incorporated in California, whose address is 16870 West Bernardo Drive, No. 400, San Diego, California 92127. While the Firm regrets the necessity for the length of this Motion, the facts asserted are relevant and necessary.

## I.  FACTS

1.  **Defendant's Communications Leading to the Firm's Loss of Business Opportunities with Schack Law Group.**  The Firm has been harmed by the loss of business opportunities, a development directly resulting from actions Lawyer Rae committed during and following her employment with the Firm.  For Lawyer Rae's failure to observe standard operating procedures for employees at the Firm, the Firm was and is unable to exercise its right to pursue valuable contracts with Schack Law.

2.  Records show that on September 1, 2023, at 12:18 p.m., Lawyer Rae accepted a call initiated by Schack Law to a Samsung Smartphone owned by Law Offices of Christy Lee, P.C., with the number of 808-773-2478, also owned by Law Offices of Christy Lee, P.C. Exhibit 1.  Law Offices of Christy Lee, P.C., issued the Smartphone to Lawyer Rae to be used solely for Firm-related purposes.

3.  As the Firm would eventually discover, during the course of her employment with the Firm, Lawyer Rae voluntarily entered into an agreement with Schack Law that advanced herself and Manifest Legal at the expense of the Firm, ultimately depriving the Firm of proceeds that would otherwise be rightfully owed to the Firm in light of (1) its goodwill, (2) its position as Lawyer Rae's employer, and (3) its ownership of the equipment and contact information utilized during Lawyer Rae's communications with Schack Law.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP

Page 2

4. At the time of the September 1, 2023, call with Schack Law, Lawyer Rae was an employee of the Firm. Despite the Firm's strict no-moonlighting policy for its employees, and regardless of the Firm's standard operating procedures requiring all calls from prospective clients to be routed to the Firm's main office for intake,[1] Lawyer Rae never forwarded the call. Instead, Lawyer Rae remained on the line with Schack Law for a minimum of seven (7) minutes, then concealed facts involving the call from the Firm.[2] *Ibid.*

5. Lawyer Rae's failure to send the caller to the paralegal violated the Firm's standard operating procedures as it effectively prevented the caller from consulting with and retaining Law Offices of Christy Lee, P.C. as counsel. It also afforded Lawyer Rae the opportunity to solicit the caller as a client for herself, independent of Law Offices of Christy Lee, P.C.

6. In her Opposition to Motion to Amend Complaint, Lawyer Rae admitted she "received a call from the potential employer on Ms. Rae's business phone two weeks before Ms. Rae gave her notice of leaving the Law Offices of Christy Lee, PC." Exhibit 2. The "business phone" Lawyer Rae referred to was, in fact, ***not*** hers or Manifest Legal's. Rather, it belonged to Law Offices of Christy Lee, P.C.

---

[1] The only employee of the Firm tasked with prospective client intake is the senior paralegal (the very one drafting this motion) serving the Firm's primary office. Even Christy Lee forwards calls of inquiry to the senior paralegal. The policy ensures that necessary information from the caller is documented appropriately, that the caller is properly screened as a potential client, and that no calendar conflicts arise for appointments. Furthermore, and most importantly, the practice prevents prospective callers from receiving legal advice directly from counsel without first booking a consultation. Not only was Lawyer Rae apprised of this fact soon after her hire, but on several occasions, she actually witnessed this practice in person.

[2] Under no circumstances can a 7-minute call be construed as a call during which one leaves a voice message or as a call sent to a wrong number.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP

Law Offices of Christy Lee, P.C. v. Meghan Rae          Case No. 3:24-cv-00176-SLG

7.      Following the termination of her employment, Lawyer Rae vigorously opposed the request to return the Smartphone to the Firm. In her Opposition and Cross Motion for Preliminary Injunction, Lawyer Rae argued that "Plaintiff has no need for this phone, but the potential damage Plaintiff can cause with access to Ms. Rae's cell phone is vast." Exhibit 3. Lawyer Rae did not expand on the nature of said "potential damage," nor did she elaborate on the identity of the party at risk of being harmed by a surrender of the Smartphone to its rightful owner.  Lawyer Rae further asserted that she would be willing to return other equipment to the Firm ***contingent*** upon her permanent retention of the Smartphone. *Ibid.*

8.      **Lawyer Rae's Notice of Departure and Establishment of New Practice**. The lead-up to the Firm's eventual discovery of the September 1, 2023, telephone call between Lawyer Rae and Schack Law was complicated by mixed signals from Lawyer Rae about exactly when she established her own practice.  On September 15, 2023, Lawyer Rae gave written notice that she was leaving the Firm to start her own business in Hawaii, and she expressed the willingness to collaborate with the Firm in the future.  Exhibit 4.  Nothing in the email suggested that Lawyer Rae might have already launched her firm.

9.      **Lawyer Rae's Contract with Schack Law.**  Later that day on September 15, 2023, Lawyer Rae called Ms. Lee and boasted about having already secured a worthwhile contract with Schack Law to represent victims of the August 8, 2023, Maui fire. She was "proud of [her]self," she stated, for "negotiating" such a great deal.

10.     The Maui fire had allegedly been caused by power grids badly managed by the Hawaiian Electric Company, Inc. ("HECO"). [3]  Lawyer Rae stressed to Ms. Lee that Schack Law

---

[3] The timing of the Schack Law call to the Firm's Smartphone on September 1, 2023, occurred two weeks and one day prior to Lawyer Rae's notice of intent to open her own

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP                                                    Page 4

Law Offices of Christy Lee, P.C. v. Meghan Rae          Case No.  3:24-cv-00176-SLG
Case 3:24-cv-00176-SLG      Document 47      Filed 11/26/24      Page 4 of 21

would pay her $150 per hour, plus ALL costs, regardless of a case's outcome, with compensation guaranteed to be paid out on a regular schedule; also, she would be paid 10% of the settlement if the client won the case.

11. Furthermore, contrary to the policy requiring employees to bill all time spent working for the Firm, including the time spent on administrative tasks or on services that are not ultimately invoiced to paying clients, Lawyer Rae never logged the call in any of the Firm's databases, not in Time Matters, the client database, nor in Timeslips, the Firm's payroll and billing database.

12. **The Firm's Missed Business Opportunity.** Despite the Firm's focus on tax issues rather than on personal injury, had it been aware of Schack Law's call, the Firm would have scheduled a consultation concerning the Maui fire victims' rights and entitlements because payment of the legal fees was guaranteed.[4] The Firm has in the past diverted from tax issues on multiple occasions. In 2012, the Firm filed a Defamation case in Wise County, Texas, and to this very day, the Firm continues to deal with this same case due to multiple appeals. For the past 12 years, the Firm has benefited greatly from this case and has received substantial attorney fees.[5]

---

firm, as referenced in Lawyer Rae's Opposition to Motion to Amend Complaint. *See* Exhibit 2.

[4] The Firm performs services at a discount when payment of fees is guaranteed. For instance, the Firm contracts with Union X in Alaska to provide estate planning at greatly discounted rates for the Union members. Union X covers its members' discounted legal fees through its legal insurance program and pays the Firm directly usually within 2 weeks on being invoiced, a fact of which Lawyer Rae is well aware as she performed legal services for such members while in the Firm's employment.

[5] In the past two months (June and July 2024), this case has brought in $25,255 in attorney fees.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP                                                    Page 5

Law Offices of Christy Lee, P.C. v. Meghan Rae          Case No.  3:24-cv-00176-SLG
Case 3:24-cv-00176-SLG     Document 47     Filed 11/26/24     Page 5 of 21

13.     By September 15, 2023, there were already government plans in motion to assist the Maui fire victims. Just previously, on August 24, 2023, Maui County had filed a lawsuit against HECO for its mismanagement of the power grid despite red-flag warnings. This would turn out to be only one of hundreds of lawsuits filed against HECO. Exhibit 5, court docket.

14.     Compensation for the fire victims was a certainty as lawmakers moved quickly to establish a recovery fund. The recovery fund was well publicized through August and September 2023, a fact which Lawyer Rae knew; and on November 8, 2023, Hawaii Governor John Green officially announced the establishment of a $150 million fund. Exhibit 6. Nearly half of this fund was provided by HECO, in a clear acknowledgement of its liability.[6] As of today, the fund has exceeded $4 billion. Exhibit 7, Governor Green's press announcement.

15.     On November 20, 2023, Lawyer Rae filed a lawsuit against Hawaiian Electric Industries, Inc., on behalf of 419 Front Street Associates, LLC, and James Joshua Caleb; Barbara Grant; Michael Grant; Law Office of Valentina Stewart Watson, Inc.; Sue Peterson; and Valentina Stewart Watson. *419 Front Street et al v. Hawaiian Electric et al.* Case ID 2CCV-23-0000376. Exhibit 8, court docket.

16.     The 419 Front Street lawsuit marked the first legal action taken in Lawyer Rae's partnership with Schack Law. Lawyer Rae's website and Schack Law's website each contain a link to the same page promoting joint legal services to the Maui fire victims. Their website, attorneysformaui.com, announces on the first page that Manifest Legal, LLLC and Schack Law Group are "Partners in Recovery" (Exhibit 9).

---

[6] This substantial contribution from HECO not only acknowledges its liability but also underscores the considerable profitability of the partnership that Lawyer Rae deceitfully secured past the guaranteed $150 per hour rate.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP                                                                                    Page 6

Law Offices of Christy Lee, P.C. v. Meghan Rae                    Case No.  3:24-cv-00176-SLG
Case 3:24-cv-00176-SLG     Document 47     Filed 11/26/24     Page 6 of 21

17.    **Using Firm Computer and Phone for the Maui Fire Victims.**  The Firm has been unable to determine the number and types of documents Lawyer Rae produced on the Firm's equipment in services pursuant to her contract with Schack Law.[7]  On October 2, 2023, Josef Frelin, from Last Frontier Communications, LLC, the Firm's IT service provider, remoted into the Firm's laptop and locked the Firm's laptop, as Lawyer Rae refused to send back the Firm's intellectual property.  Almost immediately, Lawyer Rae phoned Mr. Frelin and left a distraught voice mail, frantically accusing him of destroying her work and urging him to unlock the laptop so she could retrieve documents related to the Maui fire victims. Next, although she was represented by an attorney, she herself called Firm's counsel, begging him to resolve the issue, as she required instant access to the documents she was preparing for her clients.  Again, she was highly agitated during the call, desperate to reclaim documents related to her own clients from the Maui fire which she had saved to the Firm's equipment.

18.    For months following the lockout of the Firm's computer, Lawyer Rae confessed, she was still "constantly paranoid" about potential interference with her services to her clients. She expressed great concern about Ms. Lee's possibly "log[ging] into a zoom presentation Ms. Rae was hosting for victims of the Lahaina, Maui fires, and be[ing] disruptive." Exhibit 11, excerpt

---

[7] Despite being put on notice to preserve its intellectual property and technical equipment (Exhibit 10, letter to counsel David Bae), on October 14, 2023, Lawyer Rae took the Firm's equipment to an unauthorized computer technician, Steve Rutledge, of uBreakUFix, in Hawaii.  In an attempt to circumvent the lockout imposed by the Firm's IT service, Lawyer Rae approved Mr. Rutledge to perform a complete wipe of the system. This action rendered the equipment and its data completely unrecoverable, such that evidence of bad acts was destroyed.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP

Page 7

Law Offices of Christy Lee, P.C. v. Meghan Rae          Case No.  3:24-cv-00176-SLG

of Answer, p. 20, dated March 4, 2024. Again, this was the Firm's computer! Lawyer Rae never

explained why such paranoia would continue for months.[8]

19.    **Potential Compensation for Interference with Business Opportunity.** Lawyer

Rae's current financial standing begs the question as to whether the Firm can ever recover damages

owing to it as a result of Lawyer Rae's interference with a contract with Schack Law. Lawyer Rae

and her husband Matthew have three minor children. Lawyer Rae's husband earns a little more

than $100,000 annually.[9] The Raes' residence at 1198 Akumu Street, Kailua, Hawaii, is

encumbered with two (2) mortgages totaling more than $1.2 million.[10] On information and belief,

the Raes' three (3) children are enrolled in private school. Today the estimated annual cost is

$7,500 per child, or $22,500.[11]

20.    **Justice Delayed Due to Lawyer Rae's Antics**. These proceedings were launched

in October 2023. Today, more than nine (9) months later, the proceedings continue to be bogged

down by frivolous pleadings by Lawyer Rae that must be addressed. This case has not even

progressed further than Motions to Dismiss. Here are just a few of the pleadings and actions by

Lawyer Rae has filed to prolong this litigation. (NOTE there are many more, but the court does

not have time for another 61-page Motion):

---

[8] The only reasonable conclusion to such a situation is that Lawyer Rae had indeed used the Firm's computer for her own purposes and that, after the lockout, she feared losing still more work-related product.

[9] *See* Exhibit 12. Lawyer Rae's workpapers for 2020's tax return reflect that Matthew Rae earned $100,407.84 for the year. Lawyer Rae has stated to Ms. Lee that Mr. Rae's annual salary remains well within the same range each year as he is employed in her parents' plumbing business, but they give him no raises because he is not well-liked. As a part-time employee of the Firm through September 18, 2023, Lawyer Rae earned $63,595.50.

[10] *See* Exhibit 13. IRS Forms 1098 show that a total of $1,266,966 was owed for the Raes' two (2) mortgages at the end of 2020.

[11] *See* Exhibit 14.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP                                                              Page 8

Law Offices of Christy Lee, P.C. v. Meghan Rae                  Case No. 3:24-cv-00176-SLG
Case 3:24-cv-00176-SLG    Document 47    Filed 11/26/24    Page 8 of 21

a. *Objection and Notice of Change of Judge.* Lawyer Rae frivolously demanded the judge's recusal based on an incorrect legal basis. The Objection was ultimately determined moot as the Firm hired new counsel in an effort to move the proceedings along.

b. *Motion to Dismiss for Lack of Personal Jurisdiction* was denied, as Lawyer Rae substantial contacts with Alaska.

c. *Answer and Counterclaim* and *Amended Counterclaim.*[12]

d. *Service of Summons of Amended Complaint.* Upon request, on March 4, 2024, the Firm and Ms. Lee agreed to electronic service of Lawyer Rae's countersuit. Exhibit 15. In fact, in her Motion to Prevent Contact by Christina Lee, Lawyer Rae acknowledges that it is a "standard common courtesy among lawyers" to accept electronic service for summons. Id. However, when the Firm asked for the same courtesy of Lawyer Rae concerning its Amended Complaint, Lawyer Rae refused, citing her concerns that acceptance of service would equate to consent to personal jurisdiction for herself and Manifest Legal. Although the Firm's counsel assured Lawyer Rae that she would not waive defenses if she accepted service, she continued to refuse. On July 22, 2024, the United States Postal Service unsuccessfully attempted service by certified mail and left a reminder notice to schedule delivery on July 27, 2024. Ex. 16. Personal service by Darin Haitsuka, of ABC Legal, was attempted on July 22, July 23, and July 24, 2024. Also on July 24, 2024, Mr. Haitsuka spoke by telephone with Lawyer Rae, who informed him that she would not be available for service until after August 5, 2024. Ex. 17.

---

[12] On March 4, 2024, Lawyer Rae submitted her Answer and countersued the Firm and Ms. Lee, individually, demanding $500,000 in relief. Not only is the $500,000 claim egregious, but the Counterclaim also exposed Lawyer Rae's gross lack of legal acumen. It revealed her blatant violations of client confidentiality, breaches of attorney-client privilege, and marked the beginning of her ongoing contempt for court proceedings related to privileged bar matters.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP

e.     *Discovery.* Lawyer Rae refused to answer almost the entire discovery request[13] and she is ignoring our request to meet and confer, there will be a Motion to Compel in the near future.

f.     The Firm expects that Lawyer Rae will attempt to prolong these proceedings indefinitely.  During the hearing for the Motion to Dismiss for Lack of Personal Jurisdiction, Lawyer Rae asserted to the court that she is reserving the issue of personal jurisdiction for trial. Her recent denial of electronic service of the Firm's Amended Complaint arose from her intent to move to dismiss the case against Manifest Legal. Exhibit 18. Therefore, there is another Motion to Dismiss to be filed by Lawyer Rae and possibly heard.

## II.     LEGAL

> A Constructive trust is an equitable remedy that becomes available upon clear and convincing proof that the party against whom the trust will be imposed has been unjustly enriched by receiving assets that rightly belong to the party in whose favor the trust will be created…"[T]he trust arises to prevent the property holder from retaining property obtained 'by reason of unjust, unconscionable, or unlawful means."

*Young v. Lowery*, 221 P.3d 1006, 1012 (Alaska 2009).

> We have said that a "constructive trust may be defined as a [device] used by chancery to compel one who unfairly holds a property interest to convey that interest to another whom it justly belongs"; the trust arises to prevent the property holder from retaining property obtained "by reason of unjust unconscionable, or

---

[13] Nine (9) Objections to nine (9) Requests for Production.  RFP No. 2 requested copies of all documents Lawyer Rae took from the Firm's server.  Her Objection rested on the argument that the Firm already possessed the documents; she did not cite the names of the specific documents taken, nor did she produce the copies.  Ultimately Lawer Rae produced only twenty-four (24) pages of documentation, including ten (10) 2-page bank statements for the IOLTA account of Manifest Legal. One page of each bank statement produced consisted of an incomplete reconciliation form, the type that banks typically include with their monthly statements.  In other words, ten (10) of the twenty-four (24) pages, or almost 50%, held no discernible value as discovery, other than to indicate that each bank statement was produced in its entirety.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP

unlawful means." At a minimum then, a constructive trust presupposes a transfer or holding of property in which the equitable beneficiary has a legal interest and unconscionable conduct by the property's holder in connection with its acquisition.

*Riddell v. Edwards*, 76 P.3d 857, 852 (Alaska 2003).

### III.   ARGUMENT

21.   **Preservation of funds Resulting from Contact with Schack Law.**  Pursuant to *Young v. Lowery*, 221 P.3d 1006, 1012 (Alaska 2009) and *Riddell v. Edwards*, 76 P.3d 8857, 852 (Alaska 2003), it is appropriate and necessary that the court impose a constructive trust on all proceeds paid or payable by Schack Law Group, Inc., to Lawyer Meghan Rae and/or Manifest Legal, LLLC.  Lawyer Rae has derived and will continue to derive an unknown, but potentially substantial monetary advantage from undisclosed communications with Schack Law conducted via the Firm's Smartphone when Lawyer Rae was still employed by the Firm. Lawyer Rae's failure to observe the Firm's policies concerning prospective clients led to her interception and diversion of the resulting profitable contracts with Schack Law and to claim the fruits of those contracts for herself. Therefore, the Firm is entitled to proceeds resulting from those communications with Schack Law.

22.   Employees owe employers a duty of loyalty.[14]  Any legal business obtained while employed by LOCL, using LOCL's equipment, belongs to LOCL Defendant's co-option of a business opportunity from her employer, LOCL, supports a violation of plaintiff's First Cause of Action, Faithless Employee Doctrine, which alleges in part that

---

[14] Helmuth v. UAF, 908 P2d 1017, 1021 (Alaska 1995)(refusal to obey reasonable instructions of employer grounds for discharge); Nyberg v. UAA, 954 P2d 1376, 1378 (Alaska 1998)(same).

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP

"Defendants wrongfully diverted a corporate opportunity for plaintiff."[15] The damages include loss of revenues which might have been obtained from Maui fire cases through Schack Law Group. "[L]oss of profits damages have been awarded in a variety of civil contexts, including tort actions (both personal and business), breach of contract actions, antitrust suits, and suits for infringement of a patent or trademark."[16]

23.     Until September 15, 2023, the Firm had *zero* knowledge of any relationship existing between Lawyer Rae and Schack Law. And even then, the information which Lawyer Rae provided about her agreement with Schack Law was heavily edited and thus incomplete by design. Lawyer Rae sought and secured the Schack Law contract, which belonged to the Firm, entirely of her own accord, through her own means, and, presumably, over her own telephone.

24.     However, under the circumstances, the call – and any resulting fruits of the call – rightfully belonged to Law Offices of Christy Lee, P.C. Failing to forward the call to the paralegal rose to the level of Interference with a Prospective Business Relationship, as alleged in the Firm's Amended Complaint.

25.     A constructive trust will ensure that funds resulting from the contract between Lawyer Rae and Schack Law are preserved through the duration of these proceedings. Thus far, Lawyer Rae has previously demonstrated conduct remarkably unbecoming of an attorney, including:

      a.      Resisting the return of intellectual property to their rightful owner;

---

[15] Plaintiff's First Amended Complaint, ¶48.
[16] Erwin v. Mendenhall, 433 P3d 1090, 1095 (Alaska 2018); Alderman v. Iditarod Properties, Inc., 32 P3d 373, 380 (Alaska 2001).

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP                                                                 Page 12

Law Offices of Christy Lee, P.C. v. Meghan Rae          Case No. 3:24-cv-00176-SLG
Case 3:24-cv-00176-SLG     Document 47     Filed 11/26/24     Page 12 of 21

b.      Spoiling evidence by wiping electronic equipment and smartphone clean of data;

c.      Committing perjury[17];

d.      Deliberately refusing service to prolong proceedings and avoid justice;

e.      Flouting the court's order to avoid breaching client confidentiality[18]; and

f.      Filing frivolous and sanctionable motions[19].

---

[17] Lawyer Rae committed perjury before the court. On February 12, 2024, during the hearing on the Motion to Dismiss, Lawyer Rae stated under oath, "I did not steal documents" from the Firm. Exhibit 19. During the March 27, 2024, hearing on the Motion for Preliminary Injunction, Lawyer Rae admitted to taking the entire case file of Client J. F. That case file consisted of more than ten (10) banker's boxes of information. Among the decedent's information on file with the Firm: emails; electronic notes; phone notes; business records; individual tax returns; social security numbers and other identification numbers; health records; personal correspondence with friends and associates; passports; photographs, including of the interior and exterior of his residence; private documentation concerning the Personal Representative, including individual tax returns with a social security number and other personal identification markers; and documentation concerning the decedent's late father, including private communications, assets, and financial records. Lawyer Rae also admitted that she had no permission to take the file. In its April 2, 2024, Order, the court acknowledged that "The evidence presented shows that Defendant likely removed from the firm some documents, including billing records and communications, that were not prepared by the Defendant and could not could *[sic.]* reasonably be construed as Defendant's property."

[18] The court has repeatedly corrected and warned Lawyer Rae about her violations of client confidentiality and contempt of court. Despite these warnings, Lawyer Rae continued to disregard legal standards and ethical boundaries. The court has now moved beyond mere warnings, ordering Lawyer Rae to show cause why she should not be held in contempt and prohibiting her from filing any documents downloaded from the Firm's server.

[19] *Motion to Prevent Contact and Motion for Expedited Consideration.* On May 29, 2024, Lawyer Rae filed a Motion to Prevent Contact by Counter Defendant Christina Lee, which unapologetically maligned Ms. Lee. The Motion was accompanied by a Motion for Expedited Consideration, both of which failed to meet the standards outlined in Rule 77(g). The Motions lacked evidence justifying urgency, demonstrated no sincere effort to resolve issues, and were based on subjective interpretations and immature tactics. Recognizing these as frivolous attempts to delay the proceedings, the court not only denied the motions but also sanctioned Lawyer Rae $1,000 for her misuse of the expedited process. This

26. Given Lawyer Rae's inclination toward unethical actions, the Firm has no faith that she will act with integrity concerning any disputed monies that she collects. It is imperative that such funds be held in trust until the litigation has concluded so that the funds cannot be dissipated.

27. **The Firm's Smartphone and Cell Number.** In these proceedings, Lawyer Rae has maintained a rather notable urgency to retain possession of the Smartphone belonging to Law Offices of Christy Lee, P.C.

    a. Contrary to Lawyer Rae's oft-repeated ownership claims, the Smartphone is not, and never was, "Ms. Rae's." However, in her Opposition to and Cross Motion for Temporary Injunction, Lawyer Rae bargained to keep the Smartphone in exchange for the return of all the other Firm equipment she held in her possession. In other words, that Smartphone, a $25 piece of technology, was worth more to Lawyer Rae than the thousands of dollars of other equipment, including a Dell laptop, a Meraki, and other hardware which Law Offices of Christy Lee, P.C., issued to her, to be used only for Firm-related purposes.

    b. Such an extreme attachment to an easily replaceable Smartphone signals that it was the data stored on the Smartphone, not the Smartphone itself, that was of great value to Lawyer Rae. Whatever the data consisted of, the Firm will never know with any complete certainty, as Lawyer Rae wiped the Smartphone prior to its court-mandated return to the Firm. Exhibit 20. Lawyer Rae also objected to producing relevant data from the Smartphone on the grounds that it was "overbroad, unduly burdensome, cumulative or vexation [*sic*.], in that the

---

decision marked the first instance where the Firm experienced respite from Lawyer Rae's persistent attempts to manipulate and prolong the legal process for her own benefit.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP

Page 14

Law Offices of Christy Lee, P.C. v. Meghan Rae    Case No. 3:24-cv-00176-SLG
Case 3:24-cv-00176-SLG    Document 47    Filed 11/26/24    Page 14 of 21

documents requested are already in the possession of Ms. Lee. . ." Exhibits 21 and 22, p. 2, Response to RFP. No. 3.

   c. Upon Lawyer Rae's delayed return of the Smartphone pursuant to the court's Order, the Firm discovered that she had locked the Smartphone with an unauthorized password. Exhibit 23. The Firm had to request multiple times that she release the password. She refused and never provided the password.

   d. The Firm has prepared a Motion to Compel concerning Lawyer Rae's objections to discovery, including RFP No. 3 as well as RFP No. 8, which asked for copies of Lawyer Rae's telephone records. Lawyer Rae also objected to RFP No. 8 for a multitude of reasons, including that the information was irrelevant. Exhibit 21 and 22. On this point, again Lawyer Rae is, quite simply, wrong. Lawyer Rae's telephone records are highly relevant to this matter as they stand to confirm any communications that ensued with Schack Law from September 1, 2023, forward.

   e. Unfortunately for her, Lawyer Rae does not have the authority to object to the Smartphone records that the Firm obtained directly from AT&T, the cell carrier. And while those records do not reveal specifics about the contents, they do reveal that she stored thousands of text messages, videos, and pictures on the Smartphone. And they reveal the telephone numbers of the parties with whom she communicated.

   f. One of those numbers? Without question, Schack Law.

   g. And did Lawyer Rae ever once confess that she accepted such a call on the Smartphone belonging to Law Offices of Christy Lee, P.C.? No. She did not.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP                Page 15

Law Offices of Christy Lee, P.C. v. Meghan Rae    Case No. 3:24-cv-00176-SLG

Case 3:24-cv-00176-SLG  Document 47  Filed 11/26/24  Page 15 of 21

28. **Lawyer Rae's Failure to Disclose Communications with Schack Law**. In her Opposition to Motion to Amend Complaint, Lawyer Rae in effect promised the court that she came clean to Ms. Lee about her contract with Schack Law.

    a.    But the reality of the event did not match the vague and pretty picture Lawyer Rae painted. "Ms. Lee was aware of ***this*** [*emphasis added*] as early as September 15, 2023 . . ." *See* Exhibit 2, p. 3. 8

    b.    However, Lawyer Rae never clarified exactly what the word "*this*" referenced. Lawyer Rae never clarified that the contract may have come about due to a call from Schack Law directly to a Smartphone owned by Law Offices of Christy Lee, P.C. Nor did Lawyer Rae ever clarify that the call was made two (2) weeks earlier to a telephone number owned by Law Offices of Christy Lee, P.C. Lawyer Rae certainly never clarified that she failed to pass along the call to the Firm's paralegal as required during her employment.

    c.    Lawyer Rae's concealment of the details of the call with Schack Law naturally leads to the conclusion that Lawyer Rae was trolling for clients prior to her departure from the Firm. And it prompts the question: How and when did Lawyer Rae have the time to negotiate her contract with Schack Law prior to her departure if she were not already actively searching for clients? It is quite obvious now that Lawyer Rae was blatantly lying to Ms. Lee by omission and knowingly putting the Firm in danger.

29. **Lost Business Opportunity.** As a direct result of Lawyer Rae's failure to follow protocol concerning prospective callers while employed by the Firm, the Firm missed the opportunity to foster a lucrative business relationship with Schack Law concerning the Maui fire victims. And lucrative it would have been, as the payment of legal fees was guaranteed by the

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP    Page 16

Law Offices of Christy Lee, P.C. v. Meghan Rae    Case No. 3:24-cv-00176-SLG
Case 3:24-cv-00176-SLG   Document 47   Filed 11/26/24   Page 16 of 21

recovery fund quickly established by the State of Hawaii. Since November 8, 2023, the recovery fund has ballooned to $4 billion. Exhibit 7.

      a.   With the huge recovery fund, earned fees from a contract with Schack Law to defend the Maui fire victims could equate to tens of thousands, even hundreds of thousands, of dollars. Schack Law promised to pay Lawyer Rae $150 per hour plus costs, guaranteed, on a regular schedule, and 10% of compensation of the awards to all prevailing litigants. She stated that the contract would earn her "easy money because some of the victims' funds had already been established." There is no reason that the Firm would not have appreciated being a party to such a contract.

      b.   With its much longer history of positive negotiations, there is no doubt whatsoever that Law Offices of Christy Lee, P.C., could and would have achieved far more favorable terms with Schack Law than did Lawyer Rae. In her tenure with the Firm, Lawyer Rae avoided engaging in discussions about the collection of legal fees with clients, choosing instead to continue working for clients whose accounts fell into delinquent status rather than suspending services until the accounts were cured. In fact, Lawyer Rae NEVER brough one client to the Firm. NOT ONE. In fact, during the September 15, 2023, telephone call with Ms. Lee, she bragged about being "proud" that she managed to secure $150 per hour from Schack Law. She has billed Schack for a total of $13,848.69.[20] Her first date of service to Schack was 9/18/23. That was the Monday Joe Frelin froze her access to the firm's server, when Ms. Lee terminated her employment because she found that she had already set up her own firm and raided the server for data. So she was already heavily committed to Schack by the time the Firm fired her. Within one week, she had already billed

---

[20] Exhibit 24.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP

Law Offices of Christy Lee, P.C. v. Meghan Rae      Case No. 3:24-cv-00176-SLG

Schack $2305. That rate was approximately $200 less per hour than what Lawyer Rae billed at when employed at the Firm. But even at $150 per hour, plus all costs paid by Schack Law, and 10% settlement bonus, the Firm would still have found the contract profitable.

      c. And with its long history of steady client retention as compared to Lawyer Rae's, who hated having initial consultations with prospective clients, there is no doubt that Law Offices of Christy Lee, P.C., could have relied on its experience in order to acquire more clients. The Firm has confirmed that Lawyer Rae's contract with Schack involves six (6) clients who were fire victims. Exhibit 8.

      d. Even though personal injury is not the Firm's primary focus, and even with a minimum of earned fees, there would have been no downside to a contract with Schack Law for the Firm. Hawaii Electric, the Defendant against whom Schack Law would be fighting, had already admitted liability. The cases would all be slam-dunks as the final settlement figures would come down to assessment of the clients' assets, including materiality, life, limb, and livelihood. And as a tax boutique, the Firm is well versed in valuations and even better yet, tax consequences to settlement proceeds. The Firm's involvement would have been invaluable to Schack Law.

      30. Because Lawyer Rae failed to fulfill her obligations while employed at the Firm, she cost the Firm a significant contract, the damages which cannot be determined until Lawyer Rae willingly cooperates in the discovery process.

      31. **Urgency of Constructive Trust Due to Prolonged Proceedings**. There is no evidence whatsoever to support the theory that Lawyer Rae will conserve the fruits of the contract with Schack Law until these proceedings have concluded. To date, her conduct has proven that she is willing to commit acts unworthy of an attorney in order to prolong the proceedings and avoid justice for theft of the Firm's intellectual and tech equipment.

32. **Potential Harm to the Firm by Prolonged Proceedings.**

a. *Prolonged Justice.* Lawyer Rae has already stated on the record her intention to challenge the court's ruling on personal jurisdiction for herself. On June 19, 2024, she stated she intends to keep fighting jurisdiction issues, and this time it is not only for herself, but also for Manifest Legal.

b. To date, Lawyer Rae has refused to accept service for the summons to Manifest Legal. She informed ABCLegal, the Firm's process server, that she will not be available for service until after August 5, 2024,[21] and she has not claimed certified mail from the US Postal Service.

c. In an uninspiring repeat of the docket thus far, even assuming Lawyer Rae can be properly served on August 6, 2024, Manifest Legal's answer will not be forthcoming for a minimum of almost three (3) months. Manifest Legal is certain to plead a motion to dismiss for personal jurisdiction.

d. Based on the speed of the proceedings to date, the Firm expects that it will be the middle to end of 2026 before trial can be set.

e. *Monetary Damages.* The longer these proceedings are drawn out, the greater the financial risk to the Firm. Lawyer Rae currently enjoys unfettered access to proceeds derived from communications with a potential client whom Law Offices of Christy Lee, P.C.,

---

[21] The Firm offers its congratulations to any new business owner, without any support staff, who can afford to be away from its client base for more than a few days at a time, let alone 2 weeks.

should rightfully be able to claim. There is great incentive for Lawyer Rae to dissipate those funds.[22]

        f.     Mr. Rae's wages have been steadily decreasing since 2018, totaling $107,113.18 in 2018; but dropping to $100,407.84 in 2020.[23] As Hawaii is one of the most expensive states in the country, a livable wage calculator developed by MIT shows that a family of five (two adults and three children) requires an annual income of $174,167. https://livingwage.mit.edu/counties/15009. Lawyer Rae's salary from the Firm helped make up the difference between Mr. Rae's salary and the standard annual income. However, the income was insufficient for Lawyer Rae's tastes and lifestyle. She wanted more. But she worked only part-time despite being offered full-time hours by the Firm.

## IV. CONCLUSION

     Lawyer Rae has been unjustly enriched by receiving assets that rightly belong to Law Offices of Christy Lee, P.C. The constructive trust will prevent Lawyer Rae from retaining and dissipating funds obtained by reason of unjust, unconscionable, and unlawful means. Lawyer Rae will not be harmed by this constructive trust as the funds will go into the Court Registry to be held

---

[22] Lawyer Rae appears to be in financial straits. Her family lives beyond its means and relies heavily on her husband Matthew's income. Her parents offered him a position at their plumbing business solely to entice Lawyer Rae and their grandchildren back to Hawaii from their home in Washington. Her relationship with her family is tenuous at best, which threatens Mr. Rae's position at the family company. Upon their relocation to Hawaii in 2017, Lawyer Rae and her husband purchased a home encumbered by two mortgages which totaled more than $1.2 million in 2020. Additionally, the private school tuition for their three children costs approximately $7,500 per child annually. However, the Raes' life was hampered by the stress of a failing marriage and financial constraints.

[23] W-2s have not been included in the exhibits as they contain confidential information.

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP

Law Offices of Christy Lee, P.C. v. Meghan Rae      Case No. 3:24-cv-00176-SLG

in safekeeping.  And it is the Firm's hope that this constructive trust will assist in this legal matter being resolved in a timely manner.

**PRAYER FOR RELIEF**

Therefore, the Firm respectfully ask that the court require the following:

1. Defendant Lawyer Rae must provide to the court within 14 days of this Order all documentation showing the proceeds that Lawyer Rae has received from Schack Law.

2. Defendant Lawyer Rae must deposit all funds received by Schack Law Group to the Alaska Court Registry within 14 days of this order.

3. Schack Law must provide any future funds that are owed to Lawyer Rae and/or Manifest Legal, LLLC, to the Alaska Court Registry, and provide to the Law Offices of Christy Lee, PC, the proof of these deposits along with invoices and statements depicting these amounts.

DATED at Anchorage, Alaska, this 26th day of Novembert, 2024.

LAW OFFICES OF JOHN C. PHARR, P.C.
Attorney for Plaintiff and Counter Defendant

By:  /s/ John C. Pharr
John C. Pharr, ABA 8211140

MOTION FOR CONSTRUCTIVE TRUST RE PROCEEDS FROM
SCHACK LAW GROUP                                                        Page 21

Law Offices of Christy Lee, P.C. v. Meghan Rae              Case No.  3:24-cv-00176-SLG
Case 3:24-cv-00176-SLG     Document 47     Filed 11/26/24     Page 21 of 21