Jahna M. Lindemuth (AK Bar No. 9711068)
C. Maeve Kendall (AK Bar No. 1711063)
CASHION GILMORE & LINDEMUTH
510 L Street, Suite 601
Anchorage, AK 99501
Telephone: (907) 222-7932
Facsimile: (907) 222-7938
jahna@cashiongilmore.com
maeve@cashiongilmore.com

*Attorneys for Meghan Rae and
Manifest Legal, LLLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAW OFFICES OF CHRISTY LEE, P.C.,<br><br>       Plaintiff,<br><br>vs.<br><br>MEGHAN RAE and MANIFEST LEGAL, LLLC,<br><br>       Defendants. | |
| MEGHAN RAE,<br><br>       Counter-Plaintiff,<br><br>vs.<br><br>LAW OFFICES OF CHRISTY LEE, P.C. and CHRISTINA LEE,<br><br>       Counter-Defendants. | Case No. 3:24-cv-00176-SLG |

## MEGHAN RAE AND MANIFEST LEGAL, LLLC'S REPLY TO OPPOSITION TO MOTION TO COMPEL

Defendants/Counter-Plaintiffs Manifest Legal, LLLC and Meghan Rae ("Defendants") hereby reply to the opposition to Defendants' Motion to Compel filed by Plaintiff/Counter-Defendants Law Offices of Christy Lee, P.C. and Counter-Defendant Christina Lee (together, "LOCL").[1]  This Court should ignore the vitriol and unsupported allegations against Rae and Manifest Legal that will ultimately be tried to the jury and focus on the merits of the Motion.  LOCL fails to assert a valid claim of attorney-client privilege, its argument related to relevance and burden is premised on the misconception that only LOCL's claims are worthy of exploration, and Defendants have met their burden to compel answers to specific requests.  Defendants' Motion to Compel should be granted.

After five years of working remotely from Hawaii for LOCL in a toxic, bullying environment, associate Rae gave notice to partner Lee that she was leaving to start her own firm in Hawaii.  Another attorney partner working for LOCL had warned Rae that Lee would not take the news of her departure well.  Though Lee was initially friendly and supportive in the telephone call on September 15, 2023, encouraging Rae to make copies of any documents she needed as templates to help with her new firm, Lee quickly reversed course.  Within 42 days, Lee sued Rae in Anchorage Superior Court and launched a smear campaign against her, targeting both Rae's clients and others in the community, in violation of her ethical obligations under the Rules of Professional Responsibility.  Lee also demanded that Rae ship her all the office equipment and files she had at her own expense[2]

---

[1]   ECF No. 87 (Defendants' Motion to Compel); ECF No. 96 (LOCL's Opposition).

[2]   Rae shipped the equipment once the Superior Court ordered that LOCL was to bear the cost of shipping, which was $690.  The two five-year-old computer monitors were

and accused her of stealing the very documents Lee had encouraged her to take. Lee's bullying behavior clearly continues even today. Despite now having received all equipment and records that had been in Rae's possession, Lee continues to retaliate against Rae with frivolous motions and vexatious and oppressive discovery tactics, punishing Rae for her perceived disloyalty in leaving LOCL.

## I. Broad Objections Based on Privilege and Relevance Must Be Overruled.

Defendants' Motion to Compel sufficiently addresses LOCL's legally unsupportable position that it can withhold swaths of relevant discovery using a blanket claim of attorney-client privilege.[3] As outlined in the Motion, this case concerns an intra-firm dispute resulting in the constructive discharge of an associate lawyer. Information that will confirm the clients she served while at the firm and the communications LOCL made about her to clients after her departure are extremely relevant and cannot be shielded from production by the assertion of the attorney-client privilege. Moreover, LOCL has made no effort to meet its burden of "identify[ing] specific communications and the grounds supporting the privilege as to each piece of evidence over which the privilege is asserted"[4] The Court should overrule LOCL's legally invalid objection and order it to produce relevant documents accordingly.

---

worth less than the cost to ship them from Hawaii to Alaska, but Lee insisted on having them back.

[3] ECF No. 87 at pp. 8 – 12.

[4] *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002).

For documents LOCL has produced, it has altered numerous documents with the use of pseudonyms and/or redacted other relevant client information to make it unusable to Defendants, based on its misapplication of the attorney-client privilege. It then provided a "key" that discloses who the client is, but only after much effort and confusion. LOCL's concealment and replacement of information in documents produced in discovery violates Civil Rule 34(b)(2)(E), which requires a party to "produce documents as they are kept in the usual course of business" and "in a form or forms in which it is ordinarily maintained."[5] By simply marking documents produced in discovery with a "Confidential" designation, the Court's Protective Order strictly limits the use and disclosure of those documents and adequately protects all information that LOCL incorrectly describes as protected by attorney-client privilege, such as the identity of LOCL's clients or mention of the general purpose of work performed for clients.[6] The Court should thus also order LOCL to reproduce unredacted and unedited versions of all documents previously produced in discovery with improper redactions and edits.

LOCL's general objection to producing discovery on the grounds of irrelevance, burden, and/or that the requests are disproportionate to the needs of the case rests on a flawed and legally unsupported premise: that discovery obligations can be avoided based on one party's subjective belief that the opposing party's claims lack merit. This position is contrary to the Federal Rules of Civil Procedure and undermines the fairness of the

---

[5] Fed. R. Civ. P. 34(b)(2)(E)(i), (ii).

[6] ECF No. 31.

discovery process. Any party is entitled to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[7] This rule does not limit discovery to claims and defenses that the opposing party deems viable. Defendants have properly asserted defenses and counterclaims, and no order has been issues by the Court dismissing or limiting them. Unless and until such an order is issued, Defendants' defenses and counterclaims are part of this case and subject to discovery. And insofar as the Court is inclined to consider a stay of discovery until resolution of the pending motion to dismiss, discovery must be stayed in its entirety rather than the prejudicial, unilateral approach proposed by LOCL that will result in the unfair and unwieldly bifurcation of this case.[8]

## II. LOCL's Fails to Justify Withholding Responsive Discovery.

***Int. Nos. 9 & 10 and RFP No. 30 – Identifying Clients Relevant to LOCL's claims & Producing Associated Communications or Notes***

LOCL refuses to identify the clients it has alleged Rae contacted by stating that those clients "have expressed fear" to Lee of retaliation by Rae. This is not a valid objection and LOCL must respond to this interrogatory, particularly since LOCL originally indicated it would provide that information once a protective order was in place.[9] As for Interrogatory No. 10, for the first time in its opposition brief, LOCL indicates that the requested

---

[7] Fed. R. Civ. P. 26(b)(1).

[8] *See* ECF No. 103 (LOCL's Motion for Entry of Protective Order to Stay Discovery) and Defendants' opposition filed simultaneously with this reply.

[9] *See* Exhibit C to Declaration of Jahna M. Lindemuth (Feb. 21, 2025) (hereafter "Lindemuth Decl.") at p. 9.

information involves a single male client, and that it would supplement its response. This supplement did not occur, and LOCL must respond to this request. RFP No. 30 was included in Defendants' Motion to Compel due to LOCL's deliberately nebulous responses to the corresponding interrogatories and promises to provide supplemental responses that never occurred.

*RFP Nos. 19 & 20 – Unredacted Phone Bills*

As shown in the sample phone record attached as Exhibit 3 to LOCL's opposition,[10] the limited phone records LOCL produced inappropriately redacted all phone numbers so that the records are rendered useless. The date and time of a particular communication is meaningless without any identifying characteristic of the person or entity on the other side of that communication. As stated above, Plaintiff must "produce documents as they are kept in the usual course of business" and "in a form or forms in which it is ordinarily maintained."[11] These records must be produced unredacted.

*RFP Nos. 3, 4, & 33 – Invoices from Clients for Whom Ms. Rae Worked*

On March 10, 2025, LOCL produced Ms. Rae's timesheets from April 3, 2023, to September 15, 2023, once again with the client names replaced post-litigation with "pseudonyms." These documents are not responsive to Defendants' requests. The requested invoices are necessary not only to show the work Ms. Rae did for LOCL clients,

---

[10]   ECF No. 96-3 at pp. 6 – 14.

[11]   Fed. R. Civ. P. 34(b)(2)(E)(i), (ii).

but also to review her work in comparison to any other LOCL employees' contributions to the same matter to assess who acted as "principal" attorney. It is also necessary for LOCL to discover invoices for all clients for whom Ms. Rae worked for the entire duration of her employment with LOCL to assess LOCL's claims that Ms. Rae was viewing invoices for clients for whom she never worked. LOCL's production of edited, non-responsive documents pertaining to a limited time period is yet another example of LOCL's incorrect view of discovery in this litigation: through the lens that only documents and time periods relevant to their claims are relevant and discoverable. Plaintiff must "produce documents as they are kept in the usual course of business" and "in a form or forms in which it is ordinarily maintained."[12] All requested invoices (unredacted and unedited) must be produced.

### RFP No. 5 – Native File and All Copies of the Tiered Client List 2018 – 2023

On March 11, 2025, LOCL provided copies of the Tiered Client List from January 2023 to September 2023, again with client names redacted and replaced.[13] LOCL admits that it retains Tiered Client Lists from each month yet refuses to provide any before 2023. Regardless of whether LOCL subjectively believes that this discovery alone "does not establish the status of the lead attorney for the case," the documents are relevant to that

---

[12] Fed. R. Civ. P. 34(b)(2)(E)(i), (ii).

[13] Like several documents referenced in this reply, LOCL only provided this "supplemental" discovery to Defendants' discovery requests (most served on LOCL in the first discovery requests dated July 16, 2024, with a few additional requests served November 27, 2024) after Defendants filed their Motion to Compel based on LOCL's refusal to provide responsive documents. *See* Lindemuth Decl. at ¶¶ 11 – 16, 19 – 21.

matter and must be produced. They also shed light on matters Ms. Rae worked on throughout her employment to rebut LOCL's allegations of accessing unrelated client files. Rule 45 also allows a party to "specify the form for producing electronically stored information."[14] LOCL must produce unredacted, unedited copies of the Tiered Client List for each month of Ms. Rae's employment at the firm from 2018 – 2023 in their native format.

***RFP Nos. 34 & 35 – File for Client J.P.F.***

Throughout its opposition, LOCL repeatedly makes unfounded assertions that Ms. Rae already has access to discovery she is requesting. These suppositions are incorrect, as all LOCL documents that were ever in Ms. Rae's possession have now been returned to LOCL pursuant to LOCL's requests.[15] But this objection is irrelevant and baseless—LOCL must produce all requested documents relevant to the counterclaims regardless of whether Rae also had a copy. LOCL's unsupported statement that Defendants "do[] not have standing to assert any claims of behalf of J.P.F." misses the point. Defendants are not asserting a claim on behalf of J.P.F.; they have asserted claims on their own behalf regarding Ms. Lee's dishonest behavior and that her smear campaign after Ms. Rae's departure announcement was inspired by her discovery that Ms. Rae obtained evidence of misconduct involving J.P.F.'s case. These documents are relevant and must be produced.

---

[14] Fed. R. Civ. P. 34(b)(2)(E)(ii).

[15] *See* Affidavit of Meghan Rae (March 31, 2025) (hereafter, "Rae Aff.") at ¶ 10.

*RFP Nos. 14 & 15 – Outlook Calendars for Ms. Lee and Ms. Rae*

In addition to again complaining about the time it would take to put unnecessary and inappropriate redactions into these responsive documents, LOCL argues that Ms. Rae's and Ms. Lee's Outlook calendars are "confidential." That is exactly why the Protective Order is in place: so that the parties can produce sensitive or confidential information that is relevant to this litigation under the Court's protection. LOCL's repeated assertions that Ms. Rae "deleted" everything from Outlook before she resigned are incorrect, inconsistent with the evidence, and contrary to Ms. Lee's own sworn statements about accessing Ms. Rae's Outlook account after Ms. Rae announced her resignation.[16] The Outlook calendars should be produced in their original unredacted form.

*RFP Nos. 7, 9, 11, & 12 – Unredacted TimeMatters Audit*

LOCL's decision to provide a redacted and manipulated version of the Time Matters Audit with a separate "key" to fill in the information that was removed and replaced is nonsensical and violates Federal Civil Rule 34. All LOCL must do to protect its clients' identities is to mark the document as "Confidential" and produce it unedited. Whether the document would require redactions before use at trial or in a public filing is a separate issue

---

[16] *See* Rae Aff. at ¶ 8; *see also, e.g.,* ECF No. 7-5 at p. 13 ¶ 15. In this December 14, 2023 affidavit, Ms. Lee stated that the day after Ms. Rae announced her intent to leave the firm, she "discovered" that Ms. Rae "used her Firm email account to send multiple proprietary documents to her own personal gmail email account and to her firm's email addresses" as well as that she "emailed her personal gmail account a list of her firm's logins and password information to online software and research databases." Ms. Lee could only swear to such knowledge if she had accessed Ms. Rae's firm email account to view items sent from that account.

that can be dealt with as the situation arises. An unredacted and unedited version of this audit that serves as LOCL's supposed "smoking gun" must be produced in discovery.

### *Int. No. 3 – Identification of "Trade Secrets" in LOCL's Complaint*

LOCL refuses to provide a clear response to this straightforward contention interrogatory and suggests that the "trade secrets" that form the basis of its complaint are a moving target that can change at LOCL's whim. LOCL must respond to this interrogatory by identifying the precise documents it claims are "trade secrets" from which it derives independent economic value.

### *Int. No. 5 and RFP No. 6 – Lee's Reports of Misconduct and Associated Documents*

These requests are directly relevant to Ms. Rae's claims of defamation and interference with business opportunities. LOCL's intentionally nebulous response about the possibility of bar grievances or criminal referrals does not provide a legitimate objection to these straightforward requests. LOCL should be compelled to respond.

### *Int. No. 6 – Identity and Contact Information of Former Employees*

Ms. Rae has alleged a hostile work environment created by Ms. Lee, a subject that would best be known by her employees. They are important witnesses to this litigation who likely have discoverable information. LOCL must respond to this request.

*RFP No. 1 – Original Version and Metadata of the "Office Policy"*

Rule 45 allows a party to "specify the form for producing electronically stored information."[17] LOCL's excuses that it does not have a copy or the native format of the specific Office Policy that Ms. Rae allegedly signed are not well taken. Ms. Rae never received or signed a copy of any version of this Office Policy, and therefore could not have deleted it as LOCL has repeatedly alleged without justification.[18] And if it is true that LOCL has every employee sign a version of this "Office Policy," then certainly LOCL maintains a word-version of this document to use for new employees that would have metadata to reveal the date it was created. Defendants have asked for the native format of the Office Policy LOCL has presented to this Court, to be produced in its native format (word file) with all its original metadata. The two "exemplar" Office Policies signed by other staff members provided by LOCL on March 12, 2025, fail to shed light on the origin of the Office Policy LOCL has provided in this litigation to justify all of its claims against Defendants. LOCL must respond to this reasonable and highly relevant request.

*Int. 11 – Complaints Against Lee*

This request is directly relevant to Ms. Rae's claims regarding the hostile work environment created by Ms. Lee and her inappropriate behavior. Apparently, there are so many grievances and complaints responsive to this request that it is "in no way proportional

---

[17] Fed. R. Civ. P. 34(b)(2)(E)(ii).

[18] *See* Rae Aff. at ¶ 9.

to the needs of the case." LOCL has failed to justify the withholding of this relevant information and should be compelled to respond.

### *RFP Nos. 23, 24, & 25 – LOCL Financial Documents*

The requested financial documents from LOCL for a limited time period are relevant to LOCL's claims about the firm's expenditures on Ms. Rae and Defendants defenses and counterclaims, particularly regarding LOCL's failure to fulfill financial promises such as profit shares. LOCL must respond to these requests and should be ordered to produce the previously-produced credit card statements without redactions.

### *RFP Nos. 16, 17, 27, & 32 – Emails*

Defendants have separately addressed the need for an ESI order to facilitate production of these emails, which are critical evidence relevant to Defendants' defenses and counterclaims.[19] Defendants cannot take Ms. Lee's word that the requested emails do not exist, particularly when her reasoning is that Ms. Rae somehow deleted everything in her Outlook account before announcing her departure from the firm.[20] Conclusory statements that emails to clients of the firm have not been retained are especially unbelievable given an attorney's duty to maintain a client file. No proof has been provided to suggest these emails were permanently deleted and unrecoverable.

---

[19] ECF No. 88.

[20] The affidavit of Josef Frelin, LOCL's IT expert, is noticeably void of any sworn statements regarding the alleged deletion of Ms. Rae's entire email account or about accessibility to those emails. *See* ECF No. 99.

LOCL's Amended Complaint describes in detail an "investigation into Defendant Rae's Outlook email account owned by Plaintiff" and the findings that became the basis for LOCL's causes of action.[21] As mentioned above, Ms. Lee has made statements by affidavit and sworn testimony regarding things she discovered when searching Ms. Rae's email account in the days after Ms. Rae announced her intent to depart the firm.[22] Ms. Lee has also introduced copies of emails that appear to have been printed directly from Ms. Rae's Outlook account as exhibits in prior proceedings.[23] It appears that Ms. Lee had access to Ms. Rae's email account after she removed Ms. Rae's access to LOCL's server and changed the password on Ms. Rae's LOCL email account the weekend of September 16 – 17, 2023, thereby eliminating the possibility that Ms. Rae could have permanently "deleted" her entire email account.[24]

Moreover, LOCL admits that many emails exist in their practice management software. The fact that their post-litigation migration to a new practice management

---

[21] ECF No. 7-62 at p. 7 ¶ 26.

[22] As another example, during an evidentiary hearing before the Superior Court on March 27, 2024, Ms. Lee testified that after her call with Ms. Rae, she "went and looked even at her emails . . . and then I could see that she had been forwarding emails to herself, she'd been taking law firm documents that were private. . . . **I have the emails in her email box**." *See* Exhibit 1 to Rae Aff.

[23] *See* Exhibit 2 to Rae Aff. These emails are noticeably different from those printed out of Time Matters that say "Email Report" in the heading. *C.f., e.g.,* ECF No. 96-11.

[24] As for the phone and laptop being supposedly reset to factory settings before shipment, this action—even if it occurred, which Defendants deny—would not have had any impact on Ms. Rae's Outlook account or anything on the firm's server. Only information saved onto the physical devices would be impacted. *See, e.g.,* ECF No. 99 at ¶ 5 (Mr. Frelin discussing how the laptop's return to factory settings "overwrote all data that had been saved to the laptop").

software has resulted in additional difficulty in locating emails critical to this litigation is insufficient to overcome Defendants' right to this discovery that speaks directly to core issues. LOCL should be ordered to produce documents responsive to these requests. Defendants have proposed a reasonable ESI Order that is targeted at obtaining this electronically stored information, which should also be entered to ensure all relevant documents are produced.

### III. LOCL's Request for Attorneys' Fees is Premature and Legally Hollow.

Federal Civil Rule 37(a)(5)(B) permits the court, *after* a motion to compel is denied and *after* giving the movant an opportunity to be heard, to require payment of attorney's fees. This rare remedy may not be ordered "if the motion was substantially justified or other circumstances make an award of expenses unjust."[25] Defendants' motion is substantially justified due to LOCL's improper stonewalling of discovery based on legally faulty premises and its improper redaction of relevant documents. LOCL failed to seek a protective order to stay discovery until after the motion to compel was filed and repeatedly refused to provide relevant discovery in response to Defendants' attempts to obtain that discovery absent the Court's intervention. LOCL's request must be denied.

### IV. Conclusion

Since the inception of this litigation on October 31, 2023, in which LOCL has alleged $1,000,000 in damages, Defendants have requested a mere 12 interrogatories, 35 requests for production, and 10 requests for admission. While refusing to provide

---

[25] Fed. R. Civ. P. 37(a)(5)(B).

substantive responses to majority of these very reasonable and relevant discovery requests, and labeling Defendants' discovery requests as "scorched earth litigations tactics," LOCL has attempted to bury Ms. Rae with 19 interrogatories, 112 requests for production, and 138 requests for admission. LOCL has withheld information from Defendants under the guise of attorney-client privilege, the false allegation that Ms. Rae deleted it, and/or the objection that its production is too burdensome due to LOCL's decision to migrate to a new practice management software mid-litigation. Defendants request this Court to put an end to LOCL's stonewalling and insistence on one-sided discovery and grant Defendants' Motion to Compel.

        CASHION GILMORE & LINDEMUTH
        Attorneys for Meghan Rae and
        Manifest Legal, LLLC

DATE: <u>March 31, 2025</u>      <u>/s/ Jahna M. Lindemuth</u>
        Jahna M. Lindemuth
        Alaska Bar No. 9711068
        C. Maeve Kendall
        Alaska Bar No. 1711063

**CERTIFICATE OF SERVICE**
I hereby certify that a copy of the
foregoing was served via CM/ECF on
March 31, 2025, on all counsel of record.

CASHION GILMORE & LINDEMUTH

By: <u>/s/ Jahna M. Lindemuth</u>