# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

LAW OFFICES OF CHRISTY LEE, P.C.,

           Plaintiff,

      v.

MEGHAN RAE, *et al.*

           Defendants.

Case No. 3:24-cv-00176-SLG

MEGHAN RAE, *et al.*,

           Counterclaimants,

      v.

CHRISTINA LEE, *et al.*,

           Counterdefendants.

## ORDER ON MOTION TO DISMISS AND MOTION FOR CONSTRUCTIVE TRUST

Before the Court are several motions. At Docket 45 is Counterdefendants Law Offices of Christy Lee, P.C. ("LOCL") and Christina Lee's Motion to Dismiss Defendant's Second Amended Counterclaim. Defendants Meghan Rae and Manifest Legal, LLLC responded in opposition at Docket 70 and Counterdefendants replied at Docket 77. At Docket 47 is Plaintiff LOCL's Motion for Constructive Trust Re Proceeds from Schack Law Group.[1] Defendants

---

[1] A redacted version of this motion is at Docket 71.

responded in opposition at Docket 64, LOCL replied at Docket 73, and Defendants were permitted to file a surreply at Docket 82.

## BACKGROUND

This case arises out of an employment dispute involving Meghan Rae, a former associate attorney at LOCL. According to LOCL's Complaint, Ms. Rae began working part-time at LOCL, a law office that predominantly handles tax matters, in Hawaii in September 2018.[2] Five years later, on September 15, 2023, Ms. Rae informed LOCL by email that she was leaving the firm and intended to open her own practice.[3] In a phone call later that day, Ms. Rae also informed LOCL that she had negotiated a contract with Schack Law Group, a California-based personal injury firm, to represent victims of the devastating fires that had swept through Maui.[4] The next day, on September 16, LOCL discovered that Ms. Rae had sent documents from a LOCL server to Ms. Rae's personal email account.[5] At some point, LOCL also discovered that Ms. Rae had established a business in Hawaii and had started advertising for clients through a website

---

[2] Docket 1-1 at ¶¶ 8–10.

[3] Docket 1-1 at ¶ 14.

[4] Docket 1-1 at ¶ 17.

[5] Docket 1-1 at ¶ 18.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 2 of 33

beginning in April 2023.[6] LOCL terminated Ms. Rae from her employment with the firm on September 18, 2023.[7]

LOCL brought this suit in Alaska state court, alleging ten causes of action, including conversion, misappropriation of trade secrets, violations of the Alaska Unfair Trade Practices and Consumer Protection Act ("UTPA"), unjust enrichment, intentional interference with a prospective civil action, interference with a prospect business relationship, and defamation.[8]

In their Second Amended Counterclaims, Ms. Rae and her firm Manifest Legal, LLLC allege that in 2018 LOCL offered, and Ms. Rae accepted, an employment contract which promised appropriate raises, retirement contributions, funds for business expenses, and continued legal education.[9] Later, in 2021, Ms. Lee announced that LOCL staff would receive quarterly profit shares; however, LOCL never paid its employees these shares.[10] Defendants further allege that, upon joining the firm, Ms. Rae "immediately faced a hostile work environment" and "continually thought she would be terminated based on Ms. Lee's persistent criticism and bullying behavior."[11] Additionally, Ms. Rae alleges that she

---

[6] Docket 1-1 at ¶ 18.

[7] Docket 1-1 at ¶ 20.

[8] Docket 1-1 at ¶¶ 46–87.

[9] Docket 41 at 11 ¶¶ 5–6.

[10] Docket 41 at 13–14 ¶ 16.

[11] Docket 41 at 12 ¶ 9.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 3 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 3 of 33

uncovered that Ms. Lee had kept over $18,000 of trust funds that belonged to a client who had died in the midst of litigation.[12]  Due to the hostile work environment and the misconduct she discovered, Ms. Rae "was forced to look for other employment."[13]  Ms. Rae announced her decision to leave LOCL and start her own firm on September 15, 2023.[14]  When Ms. Lee discovered on September 16, 2023 that Ms. Rae had previously sent herself invoices and emails regarding Ms. Lee's retention of a client's trust funds, Ms. Lee told Ms. Rae she no longer worked at the firm, disparaged Ms. Rae to clients and to Schack Law Group, and refused to cooperate in the transition of clients who chose to continue to work with Ms. Rae.[15]  Defendants also allege that Ms. Lee logged in to Ms. Rae's ID.me account, which had allowed Ms. Rae to access Internal Revenue Service websites, and changed the password to prevent Ms. Rae from accessing the account.[16]  Ms. Rae and Manifest Legal, LLLC's counterclaims allege wrongful termination, breach of contract, breach of the covenant of good faith and fair dealing, violation of Hawaii wage law, intentional infliction of emotional distress, defamation, intentional

---

[12] Docket 41 at 14 ¶ 18.

[13] Docket 41 at 15 ¶ 19.

[14] Docket 41 at 15 ¶ 20.

[15] Docket 41 at 15–16 ¶¶ 22–25, 23 ¶¶ 70–72.

[16] Docket 41 at 17 ¶¶ 29–31.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 4 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 4 of 33

interference with economic advantage and contract, and violation of the UTPA.[17]
The counterclaims include Ms. Lee as an individual defendant to certain claims.[18]

This Court has jurisdiction based on diversity of citizenship.[19]

## LEGAL STANDARD

A party may seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for a complaint's "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[20] Nonetheless, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[21] When a court dismisses a complaint under Rule 12(b)(6), it must then decide whether to grant leave to amend. Under Rule 15(a), "[t]he court should freely give leave when justice so requires." However, a court may deny leave to amend for reasons of "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

---

[17] Docket 41 at 17–27 ¶¶ 32–95.

[18] *See* Docket 41 at 10–27.

[19] 28 U.S.C. § 1332.

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[21] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 5 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 5 of 33

of the amendment, [or] futility of amendment."[22]  Amendment may be considered

futile when the claims lack a cognizable legal basis[23] or when "no set of facts can

be proved under the amendment to the pleadings that would constitute a valid and

sufficient claim or defense."[24]

"[F]ederal courts sitting in diversity apply state substantive law and federal

procedural law."[25]

## DISCUSSION

### I.    Motion to Dismiss Second Amended Counterclaim

Counterdefendants LOCL and Christina Lee move to dismiss Defendants'

Second Amended Counterclaim in its entirety.[26]

#### A.    Defendants Adequately Allege Counterclaims Against Ms. Lee in her Personal Capacity.

LOCL and Ms. Lee assert that Defendants' Second Amended Counterclaim

must be dismissed as to Ms. Lee because she is improperly named as a

counterclaim defendant.[27]   Plaintiffs claim that, "[i]n order to maintain a claim

against Ms. Lee individually, defendant[s] would have to allege specific facts that

---

[22] *Foman v. Davis,* 371 U.S. 178, 182 (1962).

[23] *See Shermoen v. United States*, 982 F.2d 1312, 1319 (9th Cir. 1992).

[24] *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation and internal quotation marks omitted).

[25] *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

[26] Docket 45 at 1–2.

[27] Docket 45 at 8–9.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 6 of 33

Case 3:24-cv-00176-SLG    Document 158    Filed 05/13/25    Page 6 of 33

could lead to a finding sufficient to pierce the corporate veil," which they have not done.[28]  Defendants respond that several of their counterclaims "involve intentional torts committed by Ms. Lee individually and therefore include her as a defendant in her individual capacity."[29]  They further maintain that their claims properly seek to impose personal liability on Ms. Lee because she "actually participated in the tortious acts alleged in Defendants' counterclaims 5 through 9, she was the 'guiding spirit' behind the wrongful conduct at issue, and her actions were committed on her own behalf."[30]

Alaska law "indicates that an agent's liability depends on the type of claim asserted."[31]  "In general, courts seek to recognize and uphold the principles that the corporation exists as a separate legal entity and that owner liability for the debts of the corporation is limited."[32]  Therefore, piercing the corporate veil and imputing personal liability for a corporation's conduct to its owners may only take place "in exceptional circumstances."[33]  On the other hand, individuals, even when they act

---

[28] Docket 45 at 8–9.

[29] Docket 70 at 6.

[30] Docket 70 at 7.

[31] *Ranes & Shine, LLC v. MacDonald Miller Alaska, Inc.*, 355 P.3d 503, 513 (Alaska 2015).

[32] *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1125 (Alaska 2009) (internal quotations marks and citation omitted).

[33] *Id.*

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 7 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 7 of 33

on behalf of a business entity, may be held individually liable for their own intentional tortious conduct.[34]

Counterclaims 5 through 9—which allege intentional infliction of emotional distress, defamation, intentional interference with prospective economic advantage, intentional interference with contract, and violation of the UTPA—each seek to impose liability for Ms. Lee's own allegedly intentional tortious conduct, not the conduct of LOCL.[35]   Even assuming that Ms. Lee was acting on behalf of LOCL, she may nonetheless be held personally liable for these intentional torts.[36] Accordingly, Counterdefendants' motion to dismiss Ms. Lee as a counterclaim defendant must be denied.

### B.   Defendants State a Counterclaim for Wrongful Termination.

Ms. Lee and LOCL contend that Defendants' counterclaim for wrongful termination must be dismissed because Ms. Rae "alleges ill treatment from the beginning of her tenure with LOCL" but then stayed at the law firm for five years, undercutting the plausibility of a constructive discharge theory.[37]   Additionally, they

---

[34] *Ranes & Shine, LLC*, 355 P.3d at 513–14; *see also Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1063 n.11 (Alaska 2005) ("All persons may be found liable for their own intentional tortious conduct . . . .   The corporate form does not shield corporate officers or employees who commit torts on behalf of their employer from personal liability.").

[35] *See* Docket 41 at 22–27 ¶¶ 63–95.

[36] *See Ranes & Shine, LLC*, 355 P.3d at 513–14; *Casciola*, 120 P.3d at 1063 n.11.

[37] Docket 45 at 9–10.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 8 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 8 of 33

point out that Ms. Rae left her employment with LOCL voluntarily.[38]  Defendants respond that they have alleged sufficient facts to establish constructive discharge because "a reasonable employee in Ms. Rae's position who was forced to endure Ms. Lee's bullying and lies for five years would certainly have felt compelled to resign."[39]  Moreover, Defendants submit that this hostile treatment breached the covenant of good faith and fair dealing, which is implied in at-will employment contracts.[40]  And they maintain that Ms. Rae's decision to leave voluntarily is consistent with a theory of constructive discharge, in which an employee who resigns voluntarily may state of claim of constructive discharge by alleging that she was subjected to an environment so intolerable that continued employment was untenable.[41]  Defendants further maintain that an individual can be constructively discharged even if they endured a hostile environment for a long period.[42]

To prevail on a claim for wrongful termination under Alaska law, an employee must show "(1) that the employee was discharged by his or her employer and (2) that the employer breached a contract or committed a tort in connection with the employee's termination."[43]  "Constructive discharge is not an independent

---

[38] Docket 45 at 10.

[39] Docket 70 at 8–9.

[40] Docket 70 at 9–10.

[41] Docket 70 at 10–11 (citing *Cameron v. Beard*, 864 P.2d 538, 547 (Alaska 1993)).

[42] Docket 70 at 11.

[43] *Okpik v. City of Barrow*, 230 P.3d 672, 679 (Alaska 2010) (internal quotation marks, alteration,

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 9 of 33

Case 3:24-cv-00176-SLG   Document 158   Filed 05/13/25   Page 9 of 33

cause of action, but merely satisfies the discharge element in a claim for wrongful discharge."[44] A constructive discharge occurs "where an employer makes working conditions so intolerable that the employee is forced into an involuntary resignation."[45] An employee proceeding under a constructive discharge theory must show "that a reasonable person in the employee's position would have felt compelled to resign."[46]

LOCL and Ms. Lee question whether Defendants can maintain a claim for wrongful termination because Ms. Rae voluntarily left her employment. But when an employee pleads a constructive discharge theory of wrongful termination, whether their resignation was voluntary or involuntary is a question of fact.[47] Defendants have alleged that Ms. Lee, through persistent bullying and criticism and by engaging in dishonest conduct, created a hostile work environment that compelled Ms. Rae to resign.[48] These allegations are sufficient to support a claim that a reasonable person in Ms. Rae's position would have felt compelled to resign.

---

and citation omitted).

[44] *Pitka v. Interior Reg'l Hous. Auth.*, 54 P.3d 785, 790 (Alaska 2002) (internal quotation marks and citations omitted).

[45] *Id.* (internal quotation marks and citations omitted).

[46] *Id.* (internal quotation marks and citations omitted).

[47] *See id.* at 787, 790 (reviewing *de novo* the "facts of th[e] case" to determine whether the plaintiff adequately established that her resignation was involuntary).

[48] Docket 41 at 17–18 ¶¶ 33–37.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 10 of 33

LOCL and Ms. Lee also suggest that the allegation that Ms. Rae faced a hostile work environment from the start of her employment renders implausible her allegations that she was compelled to quit because she remained at LOCL for five years.[49] But remaining in a job for some time despite a hostile work environment is not necessarily inconsistent with a constructive discharge claim.[50] Defendants allege that "[a]fter years of suffering in this hostile work environment, as well as a series of broken promises and observing multiple instances of dishonest conduct on the part of Ms. Lee, Ms. Rae felt she had no choice but to plan for other employment."[51] LOCL and Ms. Lee's argument may go to the strength of Ms. Rae's wrongful termination claim, but it does not warrant its dismissal. Defendants have adequately alleged a claim for wrongful termination.

### C. Counterdefendants Do Not Identify Any Basis to Dismiss the Counterclaim for Breach of Contract.

LOCL and Ms. Lee next challenge Defendants' counterclaim for breach of contract. They appear to argue that Ms. Rae cannot enforce promises that were not contained in her 2018 employment agreement and that, by remaining in her position for five years and by virtue of her status as an at-will employee, Ms. Rae

---

[49] Docket 45 at 9–10.

[50] *See e.g.*, *Charles v. Interior Reg'l Hous. Auth.*, 55 P.3d 57, 60 (Alaska 2002) ("We have previously recognized that a constructive discharge may result from a 'sustained campaign of harassment' against an employee."); *Cameron v. Beard*, 864 P.2d 538, 547 (Alaska 1993) (citing an Arkansas state court case that upheld a constructive discharge judgment where an employer engaged in a sustained campaign of harassment over an 18-month period).

[51] Docket 41 at 18 ¶ 37.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 11 of 33

accepted modifications to her terms of employment.[52]  Defendants respond that the breach of contract claim is explicitly limited to the written terms of the August 2018 employment contract and does not address any oral promises, references to which in the Second Amended Counterclaim are related to other claims.[53]  They further assert that the counterclaim allegations are sufficient to state a claim for breach of contract.[54]

Defendants' counterclaim for breach of contract is specific to the August 2018 written employment agreement.[55]  Ms. Lee and LOCL's arguments for the dismissal of this claim are therefore not relevant.

### D. Defendants State a Counterclaim for Breach of the Covenant of Good Faith and Fair Dealing.

LOCL and Ms. Lee insist that Defendants do not state a counterclaim for breach of the implied covenant of good faith and fair dealing because bullying, criticism, name-calling, and scolding "do[] not amount to a violation of the covenant of good faith and fair dealing."[56]  They also maintain that the facts alleged in support of the other counterclaims and the facts related to events that took place after Ms. Rae's termination do not state a claim for breach of the implied

---

[52] Docket 45 at 11–12.

[53] Docket 70 at 12.

[54] Docket 70 at 12–13.

[55] Docket 41 at 19–20 ¶¶ 47–49.

[56] Docket 45 at 14.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 12 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 12 of 33

covenant.[57]   In response, Defendants assert that creating a hostile work environment, failing to keep promises regarding the terms of an employment contract, dishonest conduct with respect to clients, and failing to transition clients as required by the Rules of Professional Responsibility could meet both the objective and subjective elements of the claim.[58]   Defendants also point to a number of unnecessary and derisive statements about Ms. Rae that LOCL and Ms. Lee included in their motion to dismiss, and note that "[t]he fact that [LOCL] would include this commentary in its motion to dismiss only strengthens the plausibility of Ms. Rae's allegations regarding the hostile work environment she was subjected to which included Ms. Lee's inappropriate, unprofessional, and unfair behavior."[59]

"The covenant of good faith and fair dealing is implied in all at-will employment contracts."[60]   "An employer can commit either an objective or subjective breach of the covenant."[61]  "The employer commits a subjective breach when it discharges an employee for the purpose of depriving him or her of one of

_____

[57] Docket 45 at 15.

[58] Docket 70 at 13–16.

[59] Docket 70 at 15–16 (quoting Docket 45 at 14 (commenting that "[f]ive years of alleged 'bullying criticism, name calling and scolding' sounds like most high-stress workplaces," "[w]elcome to the practice of law, Ms. Rae," and "Ms. Rae needs to develop a thicker skin") (alterations in original)).

[60] *Charles*, 55 P.3d at 62.

[61] *Id.*

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 13 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 13 of 33

the benefits of the contract."[62] "The objective aspect of the covenant requires that the employer act in a manner that a reasonable person would regard as fair."[63] The Alaska Supreme Court has "previously explained that examples of objective breaches of the covenant would include disparate employee treatment, terminations on grounds that were unconstitutional, and firings that violated public policy."[64] Although the Alaska Supreme Court has not expressly held as much, constructive discharges due to a hostile work environment would presumably constitute firings that violate public policy. Therefore, Defendants have alleged sufficient facts to state a claim for breach of the implied covenant of good faith and fair dealing.

Additionally, although the Court will not impute statements in a motion signed by counsel to LOCL and Ms. Lee, it notes that mocking Ms. Rae's allegations is inappropriate and unpersuasive. And the Court strongly disagrees that bullying, name calling, or scolding should be part of the practice of law.

### E. Defendants' Counterclaim for Unpaid Wages pursuant to Hawaii Law Must Be Dismissed.

LOCL and Ms. Lee also assert that Ms. Rae has not stated a claim for violation of Hawaii wage law because educational classes are not within Hawaii law's definition of "wage" and "[t]he law applicable to the lawsuit filed is here Alaska

---

[62] *Id.* (internal quotation marks and citation omitted).

[63] *Id.*

[64] *Id.*

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 14 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 14 of 33

law."[65]  Defendants counter that, in a diversity action, a federal court applies the choice of law rules of the state in which the court is located, and that, under Alaska law, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties."[66]  They assert that the state with the most significant relationship to the transaction is Hawaii because Ms. Rae is a resident of Hawaii who worked for LOCL in Hawaii, and LOCL withheld Hawaii income tax for Ms. Rae's work and paid unemployment insurance in Hawaii.[67]  Most importantly, they claim, the wages LOCL allegedly failed to pay to accommodate Ms. Rae's attendance at educational classes would have covered time spent in Hawaii and billed to Hawaii clients.[68]  And Defendants maintain that LOCL and Ms. Lee cite the wrong statute in their argument that educational classes are not wages.[69]  LOCL and Ms. Lee reply that the Court should instead apply "§ 302 of the Restatement (Second) of Conflict of Laws, which provides that

---

[65] Docket 45 at 15–16.

[66] Docket 70 at 16–17 (alteration in original) (quoting *Palmer G. Lewis Co. v. Arco Chem. Co.*, 904 P.2d 1221, 1227 n.14 (Alaska 1995)).

[67] Docket 70 at 17.

[68] Docket 70 at 17–18.

[69] Docket 70 at 19.  According to Defendants, instead of citing the definition section of the applicable chapter of the Hawaii Revised Statutes, § 388-1, LOCL and Ms. Lee cite the definition of "wage" from a separate chapter, § 387-1.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 15 of 33

'[i]ssues involving the rights and liabilities of a corporation' will be determined by applying 'the local law of the state of incorporation.'"[70]

The Court must first determine whether Hawaii law applies to Ms. Rae's claims for unpaid wages under her contract with LOCL. Federal courts apply the choice of law rules of the state in which they sit.[71] "Alaska courts 'look to the Restatement (Second) of Conflict of Laws for guidance in resolving choice-of-law issues.'"[72] When a contract lacks a choice-of-law provision, as is the case here, "section 188 of the *Restatement* governs."[73] Section 188(1) provides that "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." Section 188(2) then directs that "the contacts to be taken into account . . . to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the

---

[70] Docket 77 at 12 (alteration in original) (quoting *Farthest N. Girl Scout Council v. Girl Scouts of the United States*, 454 P3d 974, 977 (Alaska 2019)). The Court notes that § 302 is not the appropriate test because it applies to rights and liabilities arising from issues "peculiar to corporations," such as piercing the corporate veil, rather than to issues like these based on an employment contract. *Kaiser-Francis Oil Co. v. Deutsche Oel & Gas, S.A.*, 566 P.3d 252, 262 (Alaska 2025) (quoting Restatement (Second) of Conflict of Laws § 302 cmt. a (1971)).

[71] *Alaska Airlines, Inc. v. United Airlines, Inc.*, 902 F.2d 1400, 1402 (9th Cir. 1990).

[72] *Bernie's Pharmacy, Inc. v. AmerisourceBergen Drug Corp.*, Case No. 3:18-cv-00183-TMB, 2019 WL 5156273, at *4 (D. Alaska May 1, 2019) (quoting *Savage Arms, Inc. v. W. Auto Supply Co.*, 18 P.3d 49, 53 (Alaska 2001)).

[73] *Palmer G. Lewis Co.*, 904 P.2d at 1227.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 16 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 16 of 33

subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

Applying the Restatement factors to Ms. Rae's claims for unpaid wages, the Court finds as follows: The first two factors are neutral, because the place of contracting and the place of negotiation could be considered either Hawaii or Alaska.[74] The third factor—the place of performance—is Hawaii because Ms. Rae resided and worked in Hawaii.[75] The location of the subject matter of the contract is Alaska, given that "the vast majority of [Ms. Rae's] efforts [were] dedicated to serving [LOCL's] Alaska-based clients."[76] The last factor is neutral because Ms. Rae is a resident of Hawaii and LOCL is headquartered in Alaska.[77] In balancing the factors, "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."[78] Here, where LOCL's legal services were generally provided to Alaskans and Ms. Rae was "formally employed

---

[74] The Court notes that the parties did not explicitly provide information as to which state was the site of negotiation or contracting. Courts consider these factors to come out neutral where this information is unknown or where parties "conduct negotiations from separate states by mail and telephone." *See CNA Ins. Co. v. Lightle*, 364 F. Supp. 2d 1068, 1072 (D. Alaska 2005); *Long v. Holland Am. Line Westours, Inc.*, 26 P.3d 430, 433 (Alaska 2001). Here, where Ms. Rae conceded that that these factors "could lean in favor of either Hawaii or Alaska," Docket 70 at 17, the Court assumes that negotiations were conducted remotely with each party in their respective state.

[75] Docket 1-1 at ¶ 3; Docket 41 at 11 ¶ 3, 12 ¶ 7.

[76] Docket 1-1 at ¶ 10; Docket 41 at 2–3 ¶ 10. Ms. Rae concedes that this factor comes out in favor of Alaska. Docket 70 at 17.

[77] Docket 1-1 at ¶¶ 1, 3; Docket 41 at 2 ¶¶ 1, 3.

[78] Restatement (Second) of Conflict of Laws § 188(2) (1971).

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 17 of 33

Case 3:24-cv-00176-SLG    Document 158    Filed 05/13/25    Page 17 of 33

remotely" by LOCL,[79] the fact that Ms. Rae worked remotely from Hawaii does not persuade the Court that the Hawaii contacts are more significant than the Alaska contacts. Moreover, the Court notes that while the Restatement requires a separate choice-of-law analysis for each issue presented,[80] Ms. Rae cites to no authority for the proposition that the Court should apply Hawaii law with respect to this unpaid wages claim, which is based in breach of contract,[81] but apply Alaska law for the underlying breach of contract claim.[82]

Because the Court finds that Alaska law applies with respect to an unpaid wages claim, Defendants' counterclaim for violation of Hawaii wage law must be dismissed with prejudice. Defendants may seek leave to amend to bring a comparable counterclaim under Alaska wage law.

## F. Defendants Fail to State a Counterclaim for Intentional Infliction of Emotional Distress.

LOCL and Ms. Lee contend that Ms. Rae's claim for intentional infliction of emotional distress ("IIED") should be dismissed because the counterclaim does not allege what caused her distress or what her distress consisted of, nor does it

---

[79] Docket 41 at 11 ¶ 3.

[80] *Savage Arms, Inc.*, 18 P.3d at 53.

[81] *See* Docket 41 at 22 ¶ 62 (stating that because the employment contract provides for two hours of wages every month for educational classes, LOCL is liable pursuant to Hawaii Revised Statute § 388-6).

[82] *See* Docket 41 at 20 ¶ 48 (stating that Ms. Lee "breached the employment contract as it related to . . . two hours of wages per month for Ms. Rae to take CLEs/classes"); Docket 70 at 12 (citing Alaska law for this breach of contract claim).

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 18 of 33

allege sufficiently extreme distress.[83] Defendants respond that "Ms. Rae has alleged that Ms. Lee's 'persistent bullying, criticism, name calling, and scolding . . . created a hostile work environment for Ms. Rae' and 'caused her extreme emotional distress.'"[84]

"To plead a claim for IIED, a plaintiff must allege these necessary elements: (1) the conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe."[85] "IIED claims require the trial court to make a threshold determination whether the severity of the emotional distress and the conduct of the offending party warrant a claim."[86] Although in *McGrew*, the Alaska Supreme Court concluded that the plaintiffs' complaint adequately pleaded the necessary elements by alleging, among other things, "that their distress was 'severe' and that they 'suffered personal injury, personal humiliation, mental anguish, pain and suffering,'" the Alaska Rules of Civil Procedure have a more relaxed pleading standard than do the Federal Rules.[87] Here, the mere allegation that Ms. Rae

---

[83] Docket 45 at 17–18.

[84] Docket 70 at 20 (alteration in original) (quoting Docket 41 at 22 ¶ 63).

[85] *McGrew v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 106 P.3d 319, 324 (Alaska 2005) (internal quotation marks and citation omitted).

[86] *Id.* at 325 (internal quotation marks and citation omitted).

[87] *Id.* at 324–25; *compare Bigley v. Alaska Psychiatric Institute*, 208 P.3d 168, 181 (Alaska 2009) ("In civil cases, Alaska has a fairly lenient notice pleading standard. Alaska Rule of Civil Procedure 8(a) requires that a complaint include (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." (internal quotation marks and citation omitted)), *with Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 19 of 33

suffered "extreme emotional distress" is conclusory and therefore insufficient to defeat a motion to dismiss.[88]  Therefore, Defendants' counterclaim for IIED is dismissed.  However, because Defendants may be able to add sufficient additional facts to support this claim, Defendants will be granted leave to file an amended counterclaim as to this claim.

### G. Ms. Rae States a Counterclaim for Defamation.

LOCL and Ms. Lee assert that Defendants' counterclaim for defamation must be dismissed because the Second Amended Counterclaim does not specify the statements that were allegedly defamatory and, in any event, Alaska law, specifically AS § 09.65.160, accords immunity to employers who disclose information about an employee's job performance to a prospective employer.[89] Defendants respond that "Ms. Rae has alleged that Ms. Lee 'misrepresented the circumstances of Ms. Rae's departure from [LOCL]' to Schack Law Group and other clients."[90]  And they claim that the Alaska statute providing immunity for good faith disclosures of job performance information does not apply in this instance

---

(concluding a plaintiff must plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

[88] *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[89] Docket 45 at 18–19.

[90] Docket 70 at 22 (citing Docket 28 at 16 ¶ 24, 23 ¶¶ 70–72).

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 20 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 20 of 33

because Ms. Lee's statements to third parties were unsolicited and made in bad faith and therefore fell outside the scope of the statute's protection.[91]

To state a claim for defamation under Alaska law, a plaintiff must allege "(1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence; and (4) either per se actionability or special damages."[92]  AS § 09.65.160 provides: "[a]n employer who discloses information about the job performance of an employee or former employee to a prospective employer of the employee or former employee at the request of the prospective employer or the employee or former employee is presumed to be acting in good faith and, unless lack of good faith is shown by a preponderance of the evidence, may not be held liable for the disclosure or its consequences."

Ms. Rae has adequately pleaded facts that support the elements of a defamation claim.  Ms. Rae alleges that Ms. Lee contacted Ms. Rae's clients and prospective employer, Schack Law Group, and disparaged her by making "false statements [that] misrepresented the circumstances of Ms. Rae's departure from" LOCL.[93]  Although Ms. Rae does not precisely identify the statements Ms. Lee made, her allegations are sufficiently specific and fact-bound to state a claim.

---

[91] Docket 70 at 25–26.

[92] *Alaskasland.Com, LLC v. Cross*, 357 P.3d 805, 820 (Alaska 2015) (internal quotation marks and citation omitted).

[93] Docket 41 at 23 ¶¶ 68–70, 72.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 21 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 21 of 33

Additionally, the Alaska law creating a privilege for an employer's good faith communications about the job performance of an employee or former employee to a prospective employer at the prospective employer's request may not apply here. AS § 09.65.160 only applies when information is disclosed "at the request of the prospective employer."  Ms. Rae's allegations do not suggest that Schack Law Group contacted Ms. Lee, but rather that Ms. Lee contacted Schack Law.  In sum, Defendants have adequately stated a claim for defamation.

### H. Defendants State Claims for Intentional Interference with Prospective Economic Advantage and Intentional Interference with Contract.

LOCL and Ms. Lee next assert that Ms. Rae's counterclaim for interference with prospective economic advantage should be dismissed because it is alleged upon information and belief and the Second Amended Counterclaim does not allege any lost business relationship with Schack Law Group.[94]  They also claim that the economic advantage belonged to LOCL and Ms. Lee because Ms. Rae contacted Schack Law Group when she was still employed at LOCL.[95]  Separately, LOCL and Ms. Lee contend that Defendants' counterclaim for intentional interference with contract must be dismissed because the counterclaim does not

---

[94] Docket 45 at 21.

[95] Docket 45 at 21.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 22 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 22 of 33

specify how the joint representation agreement between Ms. Rae and Schack Law Group was breached.[96]

Defendants respond that they "have alleged that [LOCL] and Ms. Lee interfered with prospective business relationships with Schack Law Group and other potential clients when Ms. Lee contacted them to disparage Ms. Rae" and that "the opportunity with Schack Law Group is not the only prospective business relationship in which [LOCL] and Ms. Lee interfered."[97]  Additionally, Defendants maintain that the counterclaim adequately alleges that Ms. Rae independently sought out the Schack contract.[98]  With respect to their claim for intentional interference with contract, Defendants insist that their counterclaim "clearly articulates" that "Ms. Rae's contract with Schack Law Group was breached, and . . . Ms. Lee's conduct was the cause of that breach."[99]

To state a prima facie case for intentional interference with prospective economic advantage, a litigant must show:

> (1) the existence of a prospective business relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship, and intent to prevent its fruition; (3) conduct by the defendant interfering with the relationship; (4) failure of the prospective relationship to culminate in pecuniary benefit to the plaintiff; (5) causation of the plaintiff's damages by the defendant's

---

[96] Docket 45 at 22.

[97] Docket 70 at 27–28.

[98] Docket 70 at 29.

[99] Docket 70 at 31; Docket 41 at 25 ¶ 87.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 23 of 33

conduct; and (6) absence of privilege or justification for the defendant's action.[100]

"[T]he tort of interference with contractual relations is merely a species of the tort of interference with prospective economic advantage" so a similar test applies.[101]  Namely, the plaintiff must allege "(1) the existence of a contract; (2) the defendant was aware of the contract; (3) the contract was breached; (4) the defendant's conduct was the cause of that breach; (5) the damages; and (6) the defendant's conduct was not privileged."[102]

Defendants allege that "Ms. Lee defamed and disparaged Ms. Rae to prospective clients that would otherwise have chosen to remain with Ms. Rae and Manifest Legal for their legal work."[103]  The loss of prospective clients is a loss of pecuniary benefit that is sufficiently specific to meet the fourth element of the tort of intentional interference with prospective economic advantage.

Defendants' allegations regarding LOCL and Ms. Lee's alleged interference with Ms. Rae's contract with Schack Law Group also state a claim of intentional interference with contract.  Defendants allege that Ms. Rae had "a joint representation agreement with Schack Law Group providing that Ms. Rae would be compensated on an hourly basis for her legal services, and furthermore would

---

[100] *J & S Servs., Inc. v. Tomter*, 139 P.3d 544, 551 (Alaska 2006) (citation omitted).

[101] *Oaksmith v. Brusich*, 774 P.2d 191, 198 (Alaska 1989).

[102] *Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 443 (Alaska 2004).

[103] Docket 41 at 24 ¶ 75.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 24 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 24 of 33

receive a percentage of fees."[104]  They further allege that "Ms. Rae's contract with Schack Law Group was breached, and upon information and belief, Ms. Lee's conduct was the cause of that breach."[105]  These allegations are similarly sufficient to meet the elements of the tort of intentional interference with contractual relations.  That Defendants allege on information and belief that Ms. Lee's conduct was the cause of a breach of contract is of no moment.  A plaintiff may plead facts alleged on information and belief "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."[106]  In this case, Defendants allege that Ms. Lee contacted Schack Law Group and disparaged Ms. Rae and that Schack Law Group then breached its contract with Ms. Rae.[107]  Whether this breach was precipitated by Ms. Lee's conduct is a fact peculiarly within Schack Law Group's possession, but an inference that Ms. Lee's conduct caused the breach is permissible based on the sequence of events alleged.  Additionally, Ms. Lee and LOCL claim that the counterclaim does not clearly state how the contract was breached, but it is sufficiently clear in context that Defendants are alleging that Schack Law Group failed to satisfy the joint representation

---

[104] Docket 41 at 25 ¶ 84.

[105] Docket 41 at 25 ¶ 87.

[106] *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (internal quotation marks and citation omitted).

[107] Docket 41 at 25 ¶¶ 86–87.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 25 of 33

agreement's terms with respect to Ms. Rae's compensation.[108]  In sum, the Second Amended Counterclaim adequately states claims for intentional interference with prospective economic advantage and intentional interference with contract.

## I.  Defendants Fail to State a Counterclaim for Violation of the UTPA.

Finally, Ms. Lee and LOCL assert that Defendants' counterclaim for violation of the UTPA must be dismissed because Defendants do not allege that they lost clients as a result of Ms. Lee and LOCL's allegedly unfair conduct.[109]  Indeed, Ms. Lee and LOCL point out that Defendants admit in their Answer that "after September 15, 2023, Defendants provided legal services to one Alaska resident" and that they successfully retained a client formerly represented by LOCL by "undercutting LOCL's hourly rate."[110]  In response, Defendants maintain that they have stated a prima facie case for violation of the UTPA as they have alleged Ms. Lee disparaged Ms. Rae, misrepresented the circumstances of Ms. Rae's departure from LOCL to clients, and refused to cooperate in the transition of clients by blocking Ms. Rae's access to necessary materials and failing to forward critical

---

[108] *See* Docket 41 at 25 ¶¶ 84, 87.

[109] Docket 45 at 24.

[110] Docket 45 at 24 (citing Docket 41 at 2 ¶ 4, 6 ¶ 39).

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 26 of 33

IRS notices.[111]  Further, they maintain that Alaska law does not require actual injury as a result of the unfair or deceptive conduct.[112]

The UTPA provides that "[a] person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471 may bring a civil action."[113]  To establish a prima facie case pursuant to the UTPA, a litigant must allege "(1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred."[114]  "An act or practice is deceptive or unfair if it has the capacity or tendency to deceive."[115]  In addition, a private plaintiff must "suffer[] an ascertainable loss" to maintain UTPA claim.[116]

Defendants' Second Amended Counterclaim generally alleges that Ms. Rae and Manifest Legal "suffered damages in an amount to be proven at trial."[117]  This allegation is conclusory and does not suffice to allege that Ms. Rae and Manifest Legal suffered "an ascertainable loss" as the UTPA requires.  Therefore, their

---

[111] Docket 70 at 32.

[112] Docket 70 at 33 (citing *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 132 (Alaska 2000)).

[113] Alaska Stat. § 45.50.531(a).

[114] *Odom*, 999 P.2d at 132 (internal quotation marks and citation omitted).

[115] *Id.* (internal quotation marks and citation omitted).

[116] Alaska Stat. § 45.50.531(a); *see also Odom*, 999 P.2d at 132 n.11.

[117] Docket 41 at 27 ¶ 95.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 27 of 33

Case 3:24-cv-00176-SLG     Document 158     Filed 05/13/25     Page 27 of 33

counterclaim for violation of the UTPA is DISMISSED. However, because this pleading deficiency may be remedied, Defendants are granted leave to amend.

For the foregoing reasons, the Motion to Dismiss at Docket 45 is GRANTED IN PART AND DENIED IN PART.

## II.    Motion for Constructive Trust

Plaintiff LOCL moves the Court "to impose a constructive trust on any and all income, fees, and other financial benefits received or to be received by Defendants Meghan Rae . . . and Manifest Legal, LLC . . ., from the Schack Law Group."[118] LOCL asserts that Ms. Rae "has derived and will continue to derive an unknown, but potentially substantial monetary advantage from undisclosed communications with Schack Law" when she accepted legal business using LOCL's equipment for herself and caused LOCL to lose a business opportunity.[119] And LOCL submits that the Court's imposition of "[a] constructive trust will ensure that funds resulting from the contract between Lawyer Rae and Schack Law are preserved through the duration of these proceedings" and can be provided to LOCL in the event it prevails on its claim that Ms. Rae violated the faithless servant doctrine.[120] Defendants oppose the imposition of a constructive trust and contend that the applicable law does not support this preliminary relief and that the motion

---

[118] Docket 47 (SEALED) at 1–2.

[119] Docket 47 (SEALED) at 11.

[120] Docket 47 (SEALED) at 12.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 28 of 33

misunderstands the manner in which the business opportunity with LOCL arose.[121] They claim that constructive trusts "are typically applied to existing assets with identifiable value such as a parcel of land or bank account where there is a dispute over to whom the property belongs" and are thus "not the appropriate vehicle for the garnishment of future, unknown amounts."[122] Defendants further maintain that there are disputes of fact which render the relief requested inappropriate and that LOCL has not met the requirements for a preliminary injunction or prejudgment writ of attachment.[123]

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."[124] "Nevertheless, since *Erie*, the Supreme Court has instructed that a federal court's equitable authority remains cabined . . . ."[125] "Federal courts must therefore enforce 'State-created substantive rights if the mode of proceeding and remedy [are] consonant with the traditional body of equitable remedies, practice and procedure.'"[126] The Ninth Circuit has held that "a federal court must apply traditional equitable principles" before

---

[121] Docket 64 at 2.

[122] Docket 64 at 4.

[123] Docket 64 at 6–9.

[124] *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996).

[125] *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 840 (9th Cir. 2020) (citing *Guaranty Trust Co. of N.Y.*, 326 U.S. 99, 104–107 (1945)).

[126] *Id.* at 840 (alteration in original) (quoting *York*, 326 U.S. at 106).

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 29 of 33

Case 3:24-cv-00176-SLG    Document 158    Filed 05/13/25    Page 29 of 33

awarding equitable relief and observed that "[i]t has been a fundamental principle . . . that state law cannot expand or limit a federal court's equitable authority."[127]

Alaska law provides that a court may hold property in a constructive trust if it "finds that a defendant is the holder of a property interest which he retains by reason of unjust, unconscionable, or unlawful means."[128]  There must be "clear and convincing proof that the party against whom the trust will be imposed has been unjustly enriched by receiving assets that rightly belong to the party in whose favor the trust will be created."[129]  "At a minimum, then, a constructive trust presupposes a transfer or holding of property in which the equitable beneficiary has a legal interest and unconscionable conduct by the property's holder in connection with its acquisition."[130]

Assuming without deciding that the imposition of a constructive trust pursuant to Alaska law does not expand this Court's equitable authority, the imposition of a constructive trust is not appropriate in this case.  In LOCL's telling, Ms. Rae used LOCL's smartphone to accept a call from a prospective client while still employed at the firm on September 1, 2023, and, in so doing, accepted a business opportunity that otherwise would have belonged to LOCL for herself.[131]

---

[127] *Id.* at 841.

[128] *State Farm Auto. Ins. Co. v. Raymer*, 977 P.2d 706, 712 (Alaska 1999) (citation omitted).

[129] *Riddell v. Edwards*, 76 P.3d 847, 852 (Alaska 2003).

[130] *Id.*

[131] Docket 47 (SEALED) at 2–5.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 30 of 33

Specifically, Ms. Rae accepted a contract to represent victims of the August 8, 2023, fire that devastated Maui.[132]

The imposition of a constructive trust in these circumstances fails for multiple, independent reasons. First, Alaska law requires that a party have a legal interest in property before a constructive trust may be imposed.[133] Having not yet proven its claim for intentional interference with prospective economic advantage, LOCL presently lacks any cognizable legal interest in the proceeds of Ms. Rae's contract with Schack Law Group. Second, LOCL's allegedly lost business opportunity is not the type of property interest that Alaska courts place in a constructive trust. Alaska courts have imposed constructive trusts where there is a dispute over who owns a discrete identifiable property, such as a parcel of real property[134] or the property in a probate case.[135] Unlike a parcel of real property or an asset to be distributed in probate, lost profits—the typical remedy in an action for intentional interference with prospective economic advantage and the relief sought here—must be proven and calculated and are too speculative to be placed in trust at this preliminary stage.[136] Indeed, in the sole case in which an Alaska

---

[132] Docket 47 (SEALED) at 4–5.

[133] *Riddell*, 76 P.3d at 852.

[134] *See, e.g.*, *Gold Dust Mines, Inc. v. Little Squaw Gold Min. Co.*, 299 P.3d 148, 160 (Alaska 2012); *In re Estate of Fields*, 219 P.3d 995, 1016 (Alaska 2009), *as modified*, (Dec. 16, 2009).

[135] *Pestrikoff v. Hoff*, 278 P.3d 281, 286 (Alaska 2012).

[136] *See* Docket 47 (SEALED) at 11 (seeking "preservation of funds resulting from contact with Schack Law").

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 31 of 33

Case 3:24-cv-00176-SLG    Document 158    Filed 05/13/25    Page 31 of 33

court imposed a constructive trust over a monetary damages award, it did so after a jury trial had concluded and a judgment was entered.[137] Here, as LOCL acknowledges, the financial benefit Ms. Rae allegedly derived from Schack Law is "unknown."[138]

Accordingly, the Court declines to impose a constructive trust and the motion at Docket 47 is DENIED.

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. LOCL and Ms. Lee's Motion to Dismiss Defendants' Second Amended Counterclaim at Docket 45 is GRANTED IN PART AND DENIED IN PART. Defendants' counterclaim for violation of Hawaii Revised Statute § 388-6 is DISMISSED with prejudice, but Defendants may file a similar claim under Alaska law; Defendants' counterclaims for IIED and violation of the UTPA are DISMISSED with leave to amend. An Amended Counterclaim or a notice that Defendants will proceed only on the remaining counterclaims shall be filed **within 14 days of this order**.

---

[137] *See Jensen v. Goresen*, 881 P.2d 1119, 1123 (Alaska 1994).

[138] Docket 47 (SEALED) at 11.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 32 of 33

2. LOCL's Motion for Constructive Trust Re Proceeds from Schack Law Group at Docket 47 and Amended Motion for Constructive Trust at Docket 71 are DENIED.

DATED this 13th day of May, 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Motion to Dismiss and Motion for Constructive Trust
Page 33 of 33

Case 3:24-cv-00176-SLG    Document 158    Filed 05/13/25    Page 33 of 33