**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| LAW OFFICES OF CHRISTY LEE, P.C., | |
| Plaintiff, | |
| v. | Case No. 3:24-cv-00176-SLG |
| MEGHAN RAE, *et al.*, | |
| Defendants. | |
| MEGHAN RAE, *et al.*, | |
| Counterclaimants, | |
| v. | |
| CHRISTINA LEE, *et al.*, | |
| Counterdefendants. | |

## <u>ORDER ON PENDING MOTIONS</u>

This order addresses the following eight pending motions:

1. At Docket 108 is a Motion to Compel filed by Plaintiff Law Offices of Christy Lee, P.C. ("LOCL"). Defendants Meghan Rae and Manifest Legal, LLLC responded in opposition at Docket 125, to which Plaintiff replied at Docket 142.

2. At Docket 109 is Plaintiff's Motion for Leave to File Under Seal, in which Plaintiff moves to file certain exhibits to its Motion to Compel under seal. No response was filed by Defendants.

3. At Docket 128 is Defendants' Motion to Accept Overlength Brief, in which Defendants move the Court to accept as filed their opposition to Plaintiff's Motion to Compel. No response was filed by Plaintiff.

4. At Docket 143 is Plaintiff's Motion for Leave to File Under Seal, in which Plaintiff moves to file certain exhibits to its reply to its Motion to Compel under seal. No response was filed by Defendants.

5. At Docket 115 is Defendants' Motion to Quash Subpoena for Records Deposition of Karen Dias. Plaintiff responded in opposition at Docket 135, to which Defendants replied at Docket 144.

6. At Docket 151 is Plaintiff's Motion to Enforce Subpoena Duces Tecum Served on Karen Dias. Defendants responded in opposition at Docket 160, to which Plaintiff replied at Docket 163.

7. At Docket 118 is Defendants' Motion to Appoint Magistrate Judge as Discovery Master Pursuant to FRCP 53(1)(A). Plaintiff responded in opposition at Docket 133, to which Defendants replied at Docket 140.

8. At Docket 168 is Defendants' Motion for Protective Order Regarding the Records Deposition of Rae's Parents' Accountant, Alvin Higashi. Plaintiff responded in opposition at Docket 180, to which Defendants replied at Docket 181.

Oral argument was not requested on these motions and was not necessary to the Court's determinations.

# BACKGROUND

The Court assumes the readers' familiarity with its prior decisions, as well as the factual and procedural background they provide. The facts and procedural background, as directly relevant to these motions, are as follows:

This case arises out of an employment dispute involving Meghan Rae, a former associate attorney at LOCL. LOCL alleges various causes of action against Ms. Rae and her law firm, Manifest Legal, LLLC, including conversion, misappropriation of trade secrets, violations of the Alaska Unfair Trade Practices and Consumer Protection Act, unjust enrichment, intentional interference with a prospective civil action, interference with a prospective business relationship, and defamation.[1] Defendants bring counterclaims of wrongful termination, breach of contract, breach of the covenant of good faith and fair dealing, unpaid wages in violation of Alaska law, intentional infliction of emotional distress, defamation, intentional interference with prospective economic advantage, intentional interference with contract, and unfair competition in violation of Alaska's Unfair Trade Practices Act; they assert these counterclaims against LOCL and include Ms. Lee as an individual Counterdefendant to certain of the counterclaims.[2]

---

[1] Docket 1-1 at ¶¶ 46-87.

[2] Docket 166 at ¶¶ 32-108.

This case was initially filed on October 27, 2023 in the Superior Court for the State of Alaska.[3]  On May 24, 2024, Plaintiff LOCL served its First Set of Discovery Requests on Defendant Rae.[4]  On June 24, 2024, Ms. Rae served her Response to Plaintiff's First Discovery Requests.[5]  On July 23, 2024, Plaintiff sent a letter to Ms. Rae, contending that her responses "simply . . . don't meet the standard for acceptable responses," and outlining deficiencies as to each request.[6]

Defendants removed the case to this Court on August 9, 2024 based on diversity jurisdiction.[7]  On August 14, 2024, Defendants retained counsel, Jahna M. Lindemuth.[8]  On October 10, 2024, the Court entered a Protective Order for Confidential Information pursuant to the parties' Stipulation and Protective Order for Confidential Information that was filed October 3, 2024.[9]  On November 6, 2024, Kimberlee A. Colbo entered her appearance on behalf of Counterdefendants.[10]

---

[3] Docket 7-1.

[4] Docket 108 at 4; Docket 108-5.

[5] Docket 108 at 4.

[6] Docket 108-1.

[7] Docket 1.

[8] Docket 126 at ¶ 1.

[9] Docket 25; Docket 31.

[10] Docket 42.  On June 4, 2025, Ms. Colbo withdrew as counsel for Ms. Lee individually, who has elected to represent herself.  Docket 171.  Ms. Colbo remains counsel of record for LOCL.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 4 of 31
Case 3:24-cv-00176-SLG     Document 185     Filed 06/26/25     Page 4 of 31

On November 20, 2024, Plaintiff's counsel sent a letter to Defendants' counsel, following up on the July 23, 2024 letter regarding asserted deficiencies in response to Plaintiff's First Discovery Requests.[11] The following day, Plaintiff served its Third Set of Requests for Production.[12] On November 27, 2024, Defendants' counsel responded that Defendants were in the process of "doing amended and restated discovery responses for Ms. Rae. She did not have the advice of counsel when she responded to the first set of discovery, and this case looks very different now."[13] On December 23, 2024, Defendants served Amended and Restated Responses to Plaintiff's First Discovery Requests as well as their Response to Plaintiff's Second Discovery Requests.[14] Defendants state that they produced upwards of 1,700 pages of supplemental discovery on December 24, 2024 and January 30, 2025, most of which they contend was responsive to Plaintiff's First Discovery Requests.[15]

On March 19, 2025, Plaintiff's counsel sent an email to Defendants' counsel, indicating that Plaintiff intended to file a motion to compel that week "with respect to [Defendants'] incomplete discovery responses."[16] Defendants' counsel

---

[11] Docket 108-2.

[12] *See* Docket 126 at ¶ 11. The Court notes that the parties' briefing does not appear to indicate when Plaintiff propounded its Second Set of Requests for Production.

[13] Docket 126-1.

[14] Docket 109-2 [SEALED]; Docket 126-2.

[15] Docket 125 at 4; *see also* Docket 126 at ¶ 8.

[16] Docket 126-3 at 1.

responded on the same day, suggesting a telephone conference.[17] Defendants'

counsel attests that she had "heard nothing from [Plaintiff's counsel] about

perceived discovery deficiencies after [Defendants'] December production" until

this March 19, 2025 communication.[18]

On March 21, 2025, Plaintiff's counsel sent a letter to Defendants' counsel,

indicating that Plaintiff had not yet received responses to the Third Discovery

Requests, raising concerns about LOCL client files that Ms. Rae had taken from

LOCL, and offering March 25 for a meet and confer.[19] Defendants' counsel attests

that her office "immediately revised the Responses to Plaintiff's Third Requests for

Production to explain [that they had inadvertently neglected to serve the

responses] and served them on Plaintiff the same day."[20]

On March 24, 2025, Plaintiff's counsel sent a letter to Defendants' counsel

listing a series of perceived deficiencies in Defendants' responses to Plaintiff's

Third Discovery Requests.[21] Counsel for the parties conferred by email on March

24, and rescheduled the meet and confer for March 27, 2025.[22] One day prior to

the scheduled meet and confer, on March 26, 2025, Plaintiff filed the instant Motion

---

[17] Docket 126-3 at 1.

[18] Docket 126 at ¶ 9.

[19] Docket 126-4.  The letter also noted that several pages of documents were missing from the discovery that Defendants had provided and demanded their production.

[20] Docket 126 at ¶ 12.

[21] Docket 126-5.

[22] Docket 126-7 at 2.

to Compel, asserting various deficiencies in Defendants' responses to Plaintiff's First Discovery Requests.[23] Defendants responded in opposition on April 14, 2025, taking issue with Plaintiff's failure to meet and confer prior to filing the motion, and responding to the specific discovery issues raised by Plaintiff.[24] Plaintiff replied on April 22, 2025, maintaining that it had met its conferral obligation.[25]

On April 2, 2025, Defendants moved the Court to appoint a Magistrate Judge as discovery master, asserting that "the best way through this morass of discovery is to appoint a magistrate judge who has the time and ability to oversee discovery in an efficient and timely way."[26] Plaintiff responded in opposition on April 16, 2025, taking the position that the pending discovery disputes do not warrant the appointment of a discovery master.[27] Defendants replied on April 18, 2025.[28]

Also on April 2, 2025, Defendants moved to quash Plaintiff's Notice of Video Records Deposition of Ms. Rae's mother, Karen Dias, which Plaintiff had scheduled for April 16, 2025.[29] The subpoena centers on funds or payments that Ms. Dias made to Ms. Rae and to Manifest Legal from September 15, 2018 to the

---

[23] *See* Docket 108.

[24] Docket 125.

[25] Docket 142.

[26] Docket 118 at 3-4.

[27] Docket 133.

[28] Docket 140.

[29] Docket 115 at 2.

present.[30]   In their Motion to Quash, Defendants contend that Ms. Dias's Alzheimer's diagnosis renders compliance with the subpoena unduly burdensome, and maintain that the documents sought are in any case irrelevant.[31]  On April 15, 2025, Defendants' counsel notified Plaintiff's counsel that Ms. Dias would not be appearing at the deposition given Defendants' pending objection.[32]   Plaintiff responded in opposition to the Motion to Quash on April 16, 2025, asserting that Defendants lack standing to move to quash a subpoena issued to a third party, and maintaining the relevance of the documents sought.[33]  Defendants replied on April 23, 2025.[34]

On May 5, 2025, Plaintiff filed a Motion to Enforce Subpoena Duces Tecum Served on Karen Dias, asserting that because Ms. Rae lacked standing to move to quash the subpoena, the Court should order Ms. Dias to appear.[35]  Defendants responded in opposition on May 15, 2025, "incorporat[ing] by reference all

---

[30] *See* Docket 116-1.

[31] Docket 115 at 3-4.

[32] Docket 136-3.

[33] Docket 135 at 2-3, 5.

[34] Docket 144.

[35] Docket 151.

arguments made in its Motion to Quash and reply in support,"[36] to which Plaintiff replied on May 21, 2025.[37]

On May 14, 2025, Plaintiff issued a Notice of Video Records Deposition of Ms. Rae's parents' accountant, Alvin Higashi, scheduled for June 13, 2025.[38] The subpoena asks for tax returns, tax work papers, 1099s, and QuickBooks files for Ms. Rae's parents, Karen and Daniel Dias, and any business they owned from 2018 to the present, as well as for payments made to or on behalf of Ms. Rae and her husband by Ms. Rae's parents, including "any payments made to schools, daycares, preschools, vendors, medical or therapeutic providers."[39] On May 29, 2025, Defendants moved for a protective order to prevent the records deposition of Mr. Higashi, asserting that the documents sought are irrelevant to this litigation.[40] Plaintiff responded in opposition on June 12, 2025,[41] to which Defendants replied on June 19, 2025.[42]

This Court has jurisdiction based on diversity of citizenship.[43]

## LEGAL STANDARDS

---

[36] Docket 160 at 2 (first citing Docket 115; and then citing Docket 144).

[37] Docket 163.

[38] Docket 168-1 at 2; Docket 168 at 2.

[39] Docket 168-1 at 7.

[40] Docket 168 at 2-3.

[41] Docket 180.

[42] Docket 181.

[43] 28 U.S.C. § 1332.

## I. Motion to Compel

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery, providing that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

In other words, information must be (1) relevant, (2) proportional to the needs of the case, and (3) nonprivileged to be discoverable.

Additional rules provide specific mechanisms for discovery. Under Federal Rule 33, a party may serve interrogatories regarding any matter relevant under Federal Rule 26(b), and under Federal Rule 34, a party may serve requests for production asking for documents and tangible things that are "in the responding party's possession, custody, or control."[44]

If a responding party fails to answer an interrogatory or provide requested documents, the other party may move under Federal Rule 37 for an order compelling answers to interrogatories or the production of responsive documents.[45] A motion to compel discovery under Federal Rule 37(a) "must

---

[44] Fed. R. Civ. P. 34(a)(1).

[45] Fed. R. Civ. P. 37(a)(3)(B).

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 10 of 31

include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[46]

## II.    Motion for Leave to File Under Seal

There is "a general right to inspect . . . public records and documents, including judicial records and documents."[47]   Unless a particular court record is one that has been "traditionally kept secret," "a strong presumption in favor of [public] access is the starting point."[48]   The Ninth Circuit has explained that judicial records attached to dispositive motions are treated differently from records attached to nondispositive motions: "Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that 'compelling reasons' support secrecy"[49]; however, "[d]espite this strong preference for public access, [the Circuit has] carved out an exception for sealed materials attached to a discovery motion unrelated to the merits of a case. Under this exception, a party need only satisfy the less exacting 'good cause'

---

[46] Fed. R. Civ. P. 37(a)(1).

[47] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).

[48] *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotation marks omitted) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).   In *Kamakana*, the Ninth Circuit identified two categories of documents that are traditionally kept secret:   grand jury transcripts and warrant materials in the midst of a pre-indictment investigation.   447 F.3d at 1178 (citing *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)).

[49] *Id.* at 1180 (quoting *Foltz,* 331 F.3d at 1136).

standard."[50]   The good cause standard is grounded in Federal Rule of Civil Procedure 26(c)(1), which provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[51]

### III.   Motion to Enforce/Quash Subpoena, Motion for Protective Order

Federal Rule of Civil Procedure 45 governs the taking of discovery from non-parties by subpoena.  It provides that "on timely motion, the court . . . must quash or modify a subpoena that . . . subjects a person to undue burden."[52]  To determine whether a subpoena poses an undue burden:

> [C]ourts weight the burden to the subpoenaed party against the value of the information to the serving party. Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs in a Rule 45 inquiry.
>
> Whether a subpoena imposes an undue burden on a particular witness is a case specific inquiry. In addition to the need of the requesting party for the information and the burden on the non-party in complying with the subpoena, other factors a court should consider include the relevance of the requested information and the breadth or specificity of the discovery request. Courts are particularly reluctant to

---

[50] *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1097 (9th Cir. 2016) (internal quotation marks and citations omitted) (first quoting *Foltz,* 331 F.3d at 1135; and then citing *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.,* 307 F.3d 1206, 1213-14 (9th Cir. 2002)).

[51] *Id.*

[52] Fed. R. Civ. P. 45(d)(3)(A)(iv).

require a non-party to provide discovery that can be produced by a party.[53]

Federal Rule 26(c) governs protective orders, and provides:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .[54]

"The party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted.[55] Courts have "wide discretion" to determine what constitutes a showing of good cause.[56] With respect to the Rule 26 inquiry, "courts give special consideration to the burdens imposed on nonparties"; "[c]ourts are particularly reluctant to require a nonparty to provide discovery that can be produced by a party."[57]

As far as standing to object to third-party subpoenas, "[a]lthough typically only the recipient of a subpoena has standing to assert objections, a party has

---

[53] *Reynolds v. DML Ins. Servs., Inc.*, Case No. 3:14-CV-00017, 2015 WL 12804278, at *2-3 (D. Alaska June 1, 2015) (quoting *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409-10 (C.D. Cal. 2014)).

[54] Fed. R. Civ. P. 26(c)(1).

[55] *In re Roman Cath. Archbishop*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting *Foltz,* 331 F.3d at 1130).

[56] *Klund v. High Tech. Sols., Inc.*, 417 F. Supp. 2d 1155, 1157 (S.D. Cal. 2005); *see also deBarros v. Walmart Stores, Inc.*, 857 F.Supp.2d 1109, 1113 (D. Or. 2012).

[57] *Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.*, 377 F. Supp. 3d 1197, 1203 (D. Or. 2019) (first citing *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980); and then quoting

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 13 of 31

standing to challenge a subpoena issued to third parties where its own interests may be implicated."[58]

## IV.  Appointment of Discovery Masters

Pursuant to 28 U.S.C. § 636(b)(1), the Court has discretion to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," subject to certain exceptions that are inapplicable here.[59]

# DISCUSSION

## I.  Plaintiff's Motion to Compel is Denied Without Prejudice.

Plaintiff's Motion to Compel contends that there are various deficiencies in Defendants' responses to Plaintiff's First Discovery Requests; in particular, Plaintiff requests that the Court order the production of all documents responsive to Requests for Production Nos. 1, 2, 3, 4, 5, 7, 8 and, 9, as well as Interrogatories 1, 3, 4, and 8.[60]

---

*Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) "There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.")).

[58] *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013) (internal quote quotation marks and citation omitted); *see also Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 509 (D. Ariz. 2012) ("A party has standing to challenge a subpoena served on another entity only if the party can show it has a personal right or privilege regarding the subject matter of the subpoena.").

[59] The statutory exceptions are for "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C. § 636(b)(1).

The Court likewise has discretion to appoint a Special Master for discovery disputes. *In re Hanford Nuclear Rsrv. Litig.*, 292 F.3d 1124, 1138 (9th Cir. 2002).

[60] Docket 108 at 6, 17.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 14 of 31

In their opposition,[61] Defendants first contend that Plaintiff "failed to meet and confer in good faith with Defendants or give them an opportunity to respond to the perceived discovery deficiencies raised in this Motion prior to initiating court action," and that the Court should deny the Motion to Compel on that basis.[62] According to Defendants, "[a]t no point after Defendants provided Amended and Restated Responses and over 1,700 pages of additional discovery [on December 24, 2024 and January 30, 2025] in response to the November 20, 2024 letter did LOCL indicate there were still deficiencies in the responses to the First Set of Discovery Requests."[63] And, in fact, "LOCL filed this Motion to Compel on March 26, 2025, the day prior to the parties' scheduled meet and confer on outstanding discovery issues."[64] Defendants contend that the motion might have been avoided had Plaintiff met and conferred with Defendants.[65] Defendants also respond to the specific discovery issues raised by Plaintiff.[66]

In its reply, Plaintiff that maintains that it "more than met its obligation to meet and confer."[67] In particular, Plaintiff explains that it made multiple efforts to

---

[61] The Court grants Defendants' unopposed Motion to Accept Overlength Brief.  *See* Docket 128. Defendants' Opposition to Plaintiff's Motion to Compel at Docket 125 is accepted as filed.

[62] Docket 125 at 2-3.

[63] Docket 125 at 4.

[64] Docket 125 at 5.

[65] Docket 125 at 5.

[66] Docket 125 at 6-18.

[67] Docket 142 at 2.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 15 of 31

meet and confer while the matter was still pending in the Alaska Superior Court, and again after the case was removed.[68]   According to Plaintiff, the meet and confer "held on March 27, 2025 was specific to the Third Set of Discovery Requests and was never intended to be a regurgitation of previous attempts at 'meeting and conferring' on the First Set of Discovery Requests."[69]

The Court denies Plaintiff's Motion to Compel because the Court finds that Plaintiff did not adequately attempt to meet and confer with Defendants as required by Rule 37 after Defendants provided their substantial production to Plaintiff in December 2024 and January 2025.[70]   Following removal of this case and Defendants' retention of counsel, Defendants advised Plaintiff of their intention to submit amended discovery responses.[71]   Defendants then submitted amended responses to Plaintiff's First Discovery Requests, including 1,700 pages of supplemental discovery—much of which was responsive to Plaintiff's First

---

[68] Docket 142 at 2.

[69] Docket 142 at 2-3 (citing Docket 142-2).

[70] *See* Fed. R. Civ. P. 37(a)(1) ("[A motion to compel] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."); *Hattrick v. City of Ketchikan*, Case No. 5:20-cv-00013-SLG, 2022 WL 889333, at *2 (D. Alaska Mar. 25, 2022) ("The good faith conferral is not a mere formality; instead it contemplates 'honesty in one's purpose to meaningfully discuss the discovery dispute' and 'mandates a genuine attempt to resolve the discovery dispute through non-judicial means.' At a minimum, this requirement entails 'two-way communication.' . . . The failure to satisfy the good faith conferral requirement is a basis to deny a motion to compel discovery." (quoting *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996))).

[71] See *supra* discussion pp 4-5.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 16 of 31

Discovery Requests—in December 2024 and January 2025.[72]  It appears from the briefing that communication between the parties about discovery did not resume until March 19, 2025, at which point Plaintiff asserted deficiencies with Defendants' responses to the Third Discovery Requests, and counsel for the parties agreed to meet and confer on March 27, 2025.[73]

The Court agrees with Defendants that Plaintiff's filing of its Motion to Compel the day before the parties' scheduled meet and confer is an indication that there was inadequate conferral about the First Discovery Requests prior to the motion being filed.  However, even accepting as accurate Plaintiff's contention that the meet and confer was scheduled solely to discuss asserted deficiencies in the Third Discovery Requests—whereas the Motion to Compel concerns Plaintiff's First Discovery Requests—there does not appear to have been any attempt made by Plaintiff to confer about purported deficiencies in Defendants' extensive supplemental responses to Plaintiff's First Discovery Requests prior to Plaintiff filing its Motion to Compel.  The Court also notes that, given the fact that the parties had not conferred following Defendants' supplemental submissions, it is somewhat puzzling as to why Plaintiff did not intend to discuss these purported deficiencies during the March 27, 2025 meet and confer but instead elected to file the Motion to Compel the preceding day.

---

[72] See *supra* discussion p 5.

[73] See *supra* discussion pp 5-6.

Therefore, the Court denies Plaintiff's Motion to Compel without prejudice to Plaintiff renewing its motion following an adequate attempt to confer with Defendants.

## II.    Plaintiff's Motions for Leave to File Under Seal are Granted.

Plaintiff filed two motions to seal.  First, Plaintiff moves for leave to file under seal several documents that Plaintiff filed with its Motion to Compel.[74]  Plaintiff maintains that filing four exhibits (Exhibits 9, 10, 11, and 12[75]) is proper because they are "documents that have been designated as confidential under the provisions of the Protective Order" previously issued by this Court.[76]  Plaintiff contends that it is appropriate to file the other two exhibits (Exhibits 6 and 7) under seal because they "contain confidential client information that is not practical to redact."[77]

Exhibit 6 is Defendants' Amended and Restated Responses to Plaintiff's First Discovery Requests.[78]  Exhibit 7 is a confirmation email regarding a tax submission for Ms. Rae.[79]  Exhibit 9 is a QuickBooks bill for Ms. Rae.[80]  Exhibit 10

---

[74] Docket 109.

[75] The Court notes that there are two exhibits labeled Exhibit 12 and no Exhibit 11.  The Court assumes for purposes of this order that Docket 109-6 is intended to be labeled Exhibit 11, and Docket 109-7 is Exhibit 12.

[76] Docket 109 at 2.

[77] Docket 109 at 2.

[78] Docket 109-2 [SEALED].

[79] Docket 109-3 [SEALED].

[80] Docket 109-4 [SEALED].

contains bank statements for Manifest Legal, LLLC.[81]    Exhibit 11 is a copy of LOCL's Time Matters Audit Log, with client information redacted.[82]  And Exhibit 12 is a copy of Ms. Rae's timesheet from April 26, 2023, with client information anonymized.[83]

Second, Plaintiff moves for leave to file under seal one document that Plaintiff filed with its reply to its Motion to Compel.[84]  Plaintiff moves to file Exhibit 4 under seal because "[t]he text messages contained in that Exhibit were produced by Meghan Rae as confidential documents under the terms of the Protective Order entered by the Court."[85]   Exhibit 4 contains some of Ms. Rae's text messages concerning the establishment of Manifest Legal, LLLC.[86]

The Protective Order issued by the Court permits the parties to designate documents as "confidential" "if the Document contains privileged or confidential information, including but not limited to protected health information, trade secrets, private and personal information, or other confidential or proprietary information."[87]

---

[81] Docket 109-5 [SEALED].

[82] Docket 109-6 [SEALED].

[83] Docket 109-7 [SEALED].

[84] Docket 143.

[85] Docket 143 at 2.

[86] Docket 143-1 [SEALED].

[87] Docket 31 at 1-2.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 19 of 31

As suggested by the Protective Order, confidential documents may only be disclosed to certain individuals, which does not include the general public.[88]

Because Plaintiff seeks to seal materials attached to a discovery motion, Plaintiff must satisfy the good cause standard by showing that filing the documents on the public docket would cause "annoyance, embarrassment, oppression, or undue burden or expense."[89]

The Court finds that Plaintiff has shown good cause to file Exhibit 6 at Docket 109-2 under seal. It contains unredacted and non-pseudonymized client information, and redaction does not appear to be practicable.

The Court finds that Plaintiff has shown good cause to file Exhibit 7 at Docket 109-3, Exhibit 9 at Docket 109-4, and Exhibit 10 at Docket 109-5 under seal. They all contain private financial information.

The Court finds that Plaintiff has shown good cause to file Exhibit 11 at Docket 109-6 and Exhibit 12 at Docket 109-7 under seal.[90] They both contain confidential and proprietary information.

The Court finds that Plaintiff has shown good cause to file Exhibit 4 at Docket 143-1 under seal. It contains confidential and proprietary information.

---

[88] Docket 31 at 2-3.

[89] *Ctr. for Auto Safety*, 809 F.3d at 1097.

[90] Given the "strong presumption in favor of access to court records," this is subject to the public's right to seek access to this information. *See Foltz*, 331 F.3d at 1135.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 20 of 31

### III. Defendants' Motion to Quash Subpoena for Records Deposition of Karen Dias is Granted, and Plaintiff's Motion to Enforce Subpoena Duces Tecum Served on Karen Dias is Denied.

Defendants move to quash Plaintiff's subpoena of Ms. Dias. The subpoena centers on any funds or payments that Ms. Dias may have made to Ms. Rae and to Manifest Legal from September 15, 2018 to the present.[91]

In Defendants' motion, they explain that "Ms. Dias is Ms. Rae's mother who has Stage 4 Alzheimer's Disease."[92] Defendants maintain that "Plaintiff has requested a range of irrelevant documents from Ms. Dias that have nothing to do with any of the claims at issue in this litigation."[93] Moreover, according to Defendants, "[e]ven if Plaintiff's subpoena requested relevant materials, Ms. Dias's condition would make any compliance with a subpoena extraordinarily difficult, if not impossible."[94]

Plaintiff LOCL opposes the Motion to Quash. In its opposition, Plaintiff first contends that Defendants "lack[] standing to move to quash a subpoena issued to a third party" because Ms. Rae "has not provided anything showing that she, or anyone else, has legal authority to act for Ms. Dias."[95] Plaintiff then contends that

---

[91] *See* Docket 116-1.

[92] Docket 115 at 2.

[93] Docket 115 at 3.

[94] Docket 115 at 3-4.

[95] Docket 135 at 2-3 (citing *Marshall v. Galvanoni*, Case No. 2:17-cv-00820-KJM-CKD, 2019 WL 2491524, at *2 (E.D. Cal. June 14, 2019)).

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 21 of 31

the information sought is relevant because "whether [Ms. Rae] properly reported all of her earned income goes to both the issue of her credibility and the issue of her competency as a tax lawyer, as well as damages."[96]  Plaintiff maintains that "LOCL has attempted to obtain this information from [Ms. Rae] and has been unsuccessful in doing so for almost a year."[97]  Plaintiff also takes issue with the fact that Defendants did not move for expedited consideration of their motion given that the Motion to Quash was still pending by the time of the scheduled deposition.[98]

In their reply, Defendants maintain that the information sought is irrelevant, and that Plaintiff is "on a wild goose chase based on some misconception (or intentional misrepresentation) that Meghan Rae was committing tax fraud while working at LOCL."[99]  Defendants assert that because "LOCL concedes that it has already issued discovery requests to Rae for the very same records," it cannot establish the need for a third-party records deposition.[100]  Defendants also state that "Ms. Rae holds the Power of Attorney for Ms. Dias and has standing to move

---

[96] Docket 135 at 5.

[97] Docket 135 at 6.

[98] Docket 135 at 7.

[99] Docket 144 at 3.

[100] Docket 144 at 2 (citing Docket 135 at 2).

to quash the subpoena on her behalf. Alternatively, the Motion to Quash should be treated as a motion for protective order under 26(c)(1)."[101]

The Court first finds that Ms. Rae's power of attorney grants her standing to file a motion to quash on behalf of Ms. Dias. The power of attorney for Ms. Dias grants Ms. Rae general authority to act on Ms. Dias's behalf with respect to over a dozen subjects, including banking, operating an entity or business, and litigating.[102] This encompasses the ability to file a motion seeking to quash a subpoena on her behalf.[103]

The Court next grants Defendants' Motion to Quash. The Court finds that the parties adequately met and conferred prior to Defendants filing the Motion to Quash.[104] And the Court finds that requiring Ms. Dias to attend a records deposition imposes an undue burden given that she has Stage 4 Alzheimer's

---

[101] Docket 144 at 3-4 (citing Docket 148-1).

[102] Docket 148-1 at 2.

[103] The Court notes that Plaintiff does not appear to contest the fact that an agent with power of attorney has the authority to move to quash a subpoena on behalf of the principal. *See* Docket 135 at 3 (prior to Defendants establishing Ms. Rae's power of attorney, Plaintiff notes in its opposition to Defendants' Motion to Quash that Ms. Rae "has not provided anything showing that she, or anyone else, has legal authority to act for Ms. Dias" and that "[o]nce served, [Ms. Dias], or her representative, has to comply with the subpoena or move to quash it or serve objections"); Docket 135 at 5 ("Ms. Dias' husband or other family member, must have a power of attorney and can produce the records in lieu of Ms. Dias producing them."); Docket 151 at 3 ("LOCL now moves for an order enforcing the subpoena and compelling Ms. Dias, or someone who has her power of attorney, to appear and produce the records sought.").

[104] *See* Docket 115 at 4 ("On April 1, 2025, undersigned counsel met and conferred with Plaintiff's counsel via email to request that they withdraw the subpoena on Ms. Dias due to her medical condition and the irrelevance of the requested records. Plaintiff responded that they would not withdraw the subpoena.").

Disease,[105] particularly since the requested information may be sought from a party to the litigation.[106] Further, the Court finds that the vast majority of the documents requested have no relevance whatsoever to the litigation. The limited documentation sought that may have some relevance to this case is not proportional to the needs of the case.

After Defendants' Motion to Quash became fully ripe, Plaintiff moved to enforce the subpoena served on Ms. Dias.[107] Plaintiff asserts that in response to the subpoena, Ms. Dias "could have moved to quash" it but did not, "presumably in reliance on Ms. Rae's motion to quash . . . . However, as addressed in LOCL's opposition to the motion to quash, Ms. Rae lacked standing to move to quash the subpoena."[108] In its opposition, Defendants maintain that "Plaintiff's Motion revisits the same issues already raised in the briefing on Defendants' Motion to Quash Subpoena for Records Deposition" and that "Defendants incorporate by reference

---

[105] The Court notes here that Plaintiff's response that "there is nothing other than Rae's affidavit submitted to support th[e] contention" that "Ms. Dias purportedly has been diagnosed with Alzheimer's" is not made in good form, particularly given the information in Ms. Rae's affidavit regarding Plaintiff's prior awareness of Ms. Dias's cognitive decline. *See* Docket 135 at 4; Docket 116 at ¶ 6.

[106] *See Reynolds*, 2015 WL 12804278, at *2-3 (quoting *Amini Innovation Corp. v.*, 300 F.R.D. at 409-10 ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party.")); Docket 135 at 2 ("If Rae produced the documents herself, and they were requested in the Fourth Set of Requests for Production to which she should have responded on April 14th, then the records deposition would not be necessary.").

[107] Docket 151.

[108] Docket 151 at 2.

all arguments made in its Motion to Quash and reply in support."[109]  Plaintiff replies that Defendants "lack standing to oppose enforcement of the subpoena," and that the information sought is relevant and discoverable.[110]

Because the Court finds that Ms. Rae had the requisite authority to move to quash the subpoena on behalf of Ms. Dias, and because granting the Motion to Quash is warranted, the Court denies Plaintiff's Motion to Enforce Subpoena Duces Tecum Served on Karen Dias.

## IV.    Defendants' Motion for Protective Order Regarding the Records Deposition of Rae's Parents' Accountant, Alvin Higashi, is Granted.

Defendants move for a protective order regarding the records deposition of Ms. Rae's parents' accountant, Alvin Higashi.[111]  The subpoena asks for tax returns, tax work papers, 1099s, and QuickBooks files for Ms. Rae's parents and any business they owned from 2018 to the present, as well as for payments made to or on behalf of Ms. Rae and her husband by Ms. Rae's parents, including "any payments made to schools, daycares, preschools, vendors, medical or therapeutic providers."[112]

Defendants assert that "[t]his third-party discovery request seeks documents completely irrelevant to this litigation, and is designed to intimidate and harass not

---

[109] Docket 160 at 2 (first citing Docket 115; and then citing Docket 144).

[110] Docket 163 at 2.

[111] Docket 168.

[112] Docket 168-1 at 7.

only Ms. Rae but her immediate family."[113]   Defendants maintain that Plaintiff's "only claim of relevancy in this prior briefing had to do with a false (and irrelevant) claim of alleged tax fraud. . . .  But the records [Plaintiff] seeks from the Dias family go much farther into discovering the personal financial situation of Ms. Rae and her family—another topic completely irrelevant to this litigation."[114]   Defendants also attach the Affidavit of Certified Public Accountant Alvin W. Higashi in which he attests that "[i]n the time [his] office has prepared tax returns for Mr. and Mrs. Dias and their business, a W-2 or 1099 was never issued to Meghan Rae. No payments to Meghan Rae were ever taken as a business deduction in the returns [his] office prepared."[115]

In its opposition, Plaintiff contends that Defendants fail to establish that they have standing to seek a protective order because Defendants do not allege that their "own interests would be jeopardized by the discovery that is sought," that there is "any kind of privilege that attaches to the documents and information sought," or that there is "any specific prejudice or harm to [Defendants] that would result."[116]   Plaintiff maintains that "[t]he source of Rae's income during her employment with LOCL is at issue in this litigation, as is her current income. And

---

[113] Docket 168 at 2.

[114] Docket 168 at 3.

[115] Docket 168-2 at ¶ 5.

[116] Docket 180 at 3 (internal quotation marks and emphasis omitted).

the only way to determine the full extent of her income is to obtain the information that is covered by the subpoena issued to Mr. Higashi."[117] Plaintiff maintains that the information sought is also relevant to "whether [Ms. Rae] properly reported all of her earned income[, which] goes to both the issue of her credibility and the issue of her competency as a tax lawyer, as well as damages."[118] Plaintiff further asserts that it "has attempted to obtain this information from Rae and has been unsuccessful in doing so for almost a year."[119]

In their reply, Defendants maintain that a Rule 26(c) protective order is the proper vehicle for their request.[120] Defendants point to Plaintiff's opposition to their Motion to Quash the subpoena of Ms. Dias in which Plaintiff suggested that a Rule 26(c) protective order would be a more appropriate vehicle than a motion to quash.[121] Defendants further contend that they have standing to object to the subpoena "because it seeks private financial records pertaining to Ms. Dias and her husband as they relate specifically to any payments made to Ms. Rae, her husband, or her children. Ms. Rae clearly has a privacy interest in such records."[122] Defendants assert that the "overburdensome subpoena is a fishing expedition for

---

[117] Docket 180 at 4-5.

[118] Docket 180 at 5.

[119] Docket 180 at 5.

[120] Docket 181 at 2.

[121] Docket 181 at 2 & n.2 (citing Docket 135).

[122] Docket 181 at 3.

irrelevant documents," "based on the far-fetched theory that if Ms. Rae ever informally helped her mother manage an Airbnb, and if that was not disclosed or properly reported for tax purposes, this somehow undermines her credibility and competency as a tax attorney."[123] Defendants maintain that they have already produced "extensive financial records" including "Ms. Rae's tax returns from 2018 to 2024, her wage and income transcripts from 2018 to 2024 showing all income reported from any source to the IRS under Ms. Rae's social security number, all of Manifest Legal's bank account statements from account opening (May 2023) to the date of production (November 2024), and all of Manifest Legal's profit and loss statements from 2023 and 2024."[124] And Defendants take issue with the fact that the third-party subpoena seeks to bypass the Court's authority by seeking the same materials that Plaintiff sought from Defendants in its Motion to Compel.[125]

The Court first finds that Defendants have standing to challenge the third-party subpoena of Mr. Higashi, given that the subpoena seeks information related

---

[123] Docket 181 at 3-4.

[124] Docket 181 at 4-5.

[125] Docket 181 at 5.

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 28 of 31

to Ms. Rae's finances, and thus Defendants' own privacy interests are implicated.[126]

The Court next grants Defendants' Motion for Protective Order. With respect to the information sought by the third-party subpoena about Ms. Rae's and her husband's finances that was previously sought from Defendants, the Court rejects Plaintiff's attempt to seek this same information from a non-party.[127] And with respect to Plaintiff's request for far-reaching financial information about Ms. Rae's parents that goes beyond the information previously sought from Defendants, the Court exercises its "wide discretion"[128] to determine that Defendants have met their burden to show good cause for a protective order; there is good cause for a protective order here to protect Mr. Higashi and Defendants from undue burden and annoyance to produce extensive documentation about Ms. Rae's parents' finances, given that Ms. Rae's parents' finances are far removed from the scope of this litigation.[129]

## V. Defendants' Motion to Appoint Magistrate Judge as Discovery Master Pursuant to FRCP 53(1)(A) is Denied.

Defendants move the Court to appoint a Magistrate Judge as discovery master in this case, citing "LOCL's stonewalling in providing any meaningful

---

[126] *See Cabell*, 294 F.R.D. at 607.

[127] *See Pegatron Tech. Serv.*, 377 F. Supp. 3d at 1203 ("Courts are particularly reluctant to require a nonparty to provide discovery that can be produced by a party.").

[128] *Klund*, 417 F. Supp. 2d at 1157.

[129] *See* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party

Case No. 3:24-cv-00176-SLG, *Law Offices of Christy Lee v. Rae, et al.*
Order on Pending Motions
Page 29 of 31

discovery to Defendants/Counter-Plaintiffs, and Plaintiff's abusive and punitive use of affirmative discovery to bully Ms. Rae and her family."[130] Defendants oppose this request, contending that "[t]he pending discovery disputes in this case are not particularly complex or unusual and none of them warrant the appointment of a discovery master, simply because one party is unhappy with the timing of decisions on pending motions."[131]

Upon due consideration, the Court exercises its discretion to deny Defendants' Motion to Appoint Magistrate Judge as Discovery Master.[132]

## CONCLUSION

Based on the foregoing, IT IS ORDERED:

1. Plaintiff's Motion to Compel at Docket 108 is **DENIED WITHOUT PREJUDICE** to Plaintiff filing a motion to compel following an adequate attempt to confer with Defendants as required by Rule 37 of the Federal Rules of Civil Procedure.

2. Plaintiff's Motion for Leave to File Under Seal at Docket 109 is **GRANTED**. The following exhibits shall remain under seal: Exhibit 6 at Docket 109-2,

---

or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .").

[130] Docket 118 at 3.

[131] Docket 113 at 4.

[132] *See* 28 U.S.C. § 636(b)(1); *In re Hanford Nuclear Rsrv. Litig.*, 292 F.3d at 1138.

Exhibit 7 at Docket 109-3, Exhibit 9 at Docket 109-4, Exhibit 10 at Docket 109-5, Exhibit 11 at Docket 109-6, and Exhibit 12 at Docket 109-7.

3. Defendants' Motion to Quash Subpoena for Records Deposition of Karen Dias at Docket 115 is **GRANTED**.

4. Defendants' Motion to Appoint Magistrate Judge as Discovery Master Pursuant to FRCP 53(1)(A) at Docket 118 is **DENIED**.

5. Defendants' Motion to Accept Overlength Brief at Docket 128 is **GRANTED**. Defendants' Opposition to Plaintiff's Motion to Compel at Docket 125 is ACCEPTED as filed.

6. Plaintiff's Motion for Leave to File Under Seal at Docket 143 is **GRANTED**. Exhibit 4 at Docket 143-1 shall remain under seal.

7. Plaintiff's Motion to Enforce Subpoena Duces Tecum Served on Karen Dias at Docket 151 is **DENIED**.

8. Defendants' Motion for Protective Order Regarding the Records Deposition of Rae's Parents' Accountant, Alvin Higashi at Docket 168 is **GRANTED**.

DATED this 26th day of June, 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE